INHABITANTS OF LIVERMORE *versus* INHABITANTS OF PERU.

By virtue of R. S., c. 75, § 3, when, before his death, the parents of an ante-nuptial child, intermarry and have other children and adopt him into their family, he is thereby legitimated, and he derives his pauper settlement according to the rules governing that of legitimate children.

A party, who, under a mistake as to the law, but with a full knowledge of all the material facts, has voluntarily paid a claim asserted against him in good faith, cannot, in a suit at law, recover back the money thus paid.

Thus, the town in which a soldier has his settlement, having, upon a suit brought in good faith therefor, voluntarily paid the town in which his family has its residence for aid furnished such family while he was in the military service of the U. S., under a mistaken supposition that such aid was in the nature of pauper supplies: — *Held,* that the money thus paid cannot be recovered back.

ON REPORT.

ASSUMPSIT, for money had and received. The last item in the first bill of supplies was dated March 18, 1862.

The Court to render such judgment as the legal rights of the parties required.

The case is fully stated in the opinion.

*Bolster & Richardson,* for the defendants.

*Reuel Washburn,* and with him *E. T. Luce,* for the plaintiffs, contended that, —

1. That one of the children, being an illegitimate, had her settlement in Mexico, of which fact the plaintiffs were ignorant when the bill for supplies was paid.

2. That, by reason of c. 63, § 6, of the Public Laws of 1861, and c. 127, § 7, of the Public Laws of 1862, (the latter approved the day of the delivery of the last item in the first bill, March 18, 1862,) the aid furnished created no pauper disabilities and was not recoverable. *Veazie* v. *China,* 50 Maine, 518; *Milford* v. *Orono,* 50 Maine, 529.

3. The rules that *ignorantia legis meminem excusat* and *volenti non fit injuria* are subject to many exceptions. *Northrup* v. *Graves,* 19 Conn., 547; *Sanford* v. *Lyon,* 21

Conn., 609; *Steadwell* v. *Anderson*, 21 Conn., 144; *Norton* v. *Marden*, 15 Maine, 45; *Hunt* v. *Rousmanier*, 8 Wheat., 174; *Silliman* v. *Wing*, 7 Hill, 159; *Freeman* v. *Curtis*, 51 Maine, 140.

BARROWS, J. — Edward W. Haines, having a derivative settlement in Livermore, moved into Peru from Mexico, in September, 1857, with his family, consisting of his wife, whom he married Nov. 1, 1853, and —— children, one of whom, Angeline, was ante-nuptial, having been born Oct. 9, 1853. He continued to reside there till Nov. 15, 1861, at which time he had four children by his wife, born in wedlock. On that day he enlisted in the 12th Regiment Maine Volunteers. His wife and family remained in Peru and, in February and March, 1862, while he was in the service of the United States as a soldier, stood in need of assistance from the town, which was furnished by Peru to the amount of $11,31. Seasonable notice was given to Livermore, naming the wife and each of the five children, (with the customary averments that they had fallen into distress and become chargeable as paupers, and that their lawful settlement was in Livermore,) and requesting their removal and the payment of the bill. The overseers of Livermore replied, denying the settlement, but subsequently, in September, 1863, after eighteen months deliberation, paid the bill, supposing that all Haines' children were born in wedlock, and that the furnishing of the supplies by Peru created pauper disabilities, and that their town was legally bound to pay. Haines' wife and family continued to live in Peru. Haines deserted the military service of the United States, May 27, 1864, and never returned to it, and, while he was absent in Canada, in the fall of 1864, his family again fell into distress. They had received State aid, at the rate of $10 per month, from the passage of the Act of March 18, 1862, up to the time of his desertion. Being again relieved as paupers by Peru, in October, November and December, 1864, to the amount of $151,62, (a part of which was for the sickness and funeral expenses of Angeline, though the whole amount furnish-

ed to the family before her death, together with her funeral expenses, did not exceed $40,) that town duly called upon Livermore for payment of $51,62, being the balance of the bill after crediting $100 for 20 acres of land conveyed by Mrs. Haines to Peru. Livermore made no denial upon this notice, but paid the balance claimed January 30, 1865, and now seeks to recover both sums thus paid by them as having been paid under a mistake of both law and fact.

The matter relied upon by the plaintiffs as mistake of fact is the want of knowledge, on the part of their overseers and agents at the time they paid these bills, that Angeline Haines was born before the marriage of the parents. They claim that she is to be considered as illegitimate, and as having the settlement of her mother at the time of her birth, which was in Peru, and that therefore so much of the sums paid by Livermore as accrued for her support, is, at all events, recoverable in this suit, as having been paid, not only under a mistake of law, but under a mistake of fact also.

And it is undoubtedly well settled, that where money has been erroneously paid or allowed under mutual ignorance, or mistake as to material facts affecting either the liability of the party paying or the amount to be paid, the sum thus erroneously paid may be recovered back. *Union Bank* v. *U. S. Bank*, 3 Mass., 74; *Pearson* v. *Lord*, 6 Mass., 81. So money paid by reason of a mistaken computation arising from a wrong date, was held recoverable. *White* v. *Leggett*, 8 Cowen, 197.

And where, in a sale of wheat by the lot, at a certain rate per bushel, both parties estimated the number of bushels from the size of another pile which both supposed contained a certain number of bushels, but which actually contained but that number of half bushels, and settled accordingly, the excess was recovered by the party paying under that mutual mistake. *Wheadon* v. *Olds*, 20 Wend., 175.

And, where an indorser of a note paid it, being ignorant of the fact that no demand had been made upon the maker

when it fell due, he was allowed to reclaim the payment thus made. *Garland* v. *Salem Bank*, 9 Mass., 408.

But it is plain that mistake or ignorance, to produce this effect, must relate to some fact that is essential upon the question of liability or amount, and that ignorance or mistake respecting immaterial circumstances cannot avail.

Now, in the case at bar, Angeline Haines, though illegitimate by birth, in consequence of the subsequent intermarriage of her parents, the birth of other children, and her own adoption into the family, is to be deemed legitimate. R. S., c. 75, § 3.

Although this doctrine of legitimation, by subsequent intermarriage of the parents, was no part of the common law, it was fully declared in the civil and canon laws, and prevails with various modifications in France, Germany, Holland and Scotland.

It is mentioned, in a note to Kent's Commentaries, vol. 2, p. 209, as a remarkable fact, that the rule of the civil law, that ante-nuptial children are legitimated by the father's marriage to the mother and recognition of the children, prevails in opposition to the common law in so many of the United States; though why it should be considered remarkable that a rule which Barrington, in his Observations on the Statutes, speaks of as "a very humane provision in favor of the innocent" should be adopted into our codes is not readily seen, unless it be supposed that our legislation is controlled by a blind preference of the common to the civil law.

There is no ground whatever for subjecting this child to a separate settlement from that of both her parents and every other member of the family, in face of an explicit statute declaration that she and others similarly situated "are deemed legitimate." Being deemed legitimate, she has the settlement of her legitimate brothers and sisters, as well as equal privileges with them in other respects, such as that of inheritance by representation of her father and mother, from kindred both lineal and collateral. The amount paid by the plaintiffs for supplies furnished to Angeline cannot be re-

Inhabitants of Livermore *v.* Inhabitants of Peru.

covered unless all which they paid is recoverable as having been paid upon a demand on which they were not legally liable, and under a mistake of both parties as to their legal rights and liabilities.

Conceding what the plaintiffs claim as to the effect of § 7, c. 127, Laws of 1862, extending the provisions of the Act passed April 25, 1861, in relation to the relief of the families of soldiers, " to all the regiments which have been or may be raised in this State," and that the town of Peru could not have maintained a suit against Livermore for the supplies furnished to the family of Haines in February and March, 1862, under the law as it stood when the notice and denial were made, we have presented to us the naked question, whether a party who has voluntarily paid a claim asserted against him in good faith, under a mistaken supposition that he was legally liable to pay it, can reclaim in a suit at law the money thus paid by reason of his mistake as to the law, when he had full knowledge of the facts?

That there have been repeated cases where apparent equities have gone far towards inducing Courts of unquestioned learning and respectability to swerve from what must, nevertheless, be considered as the well settled doctrine of the common law in this matter, cannot be denied.

But it is worthy of observation, that the *dicta* have greatly outrun the adjudicated cases, in this direction, (as in the case of *The City of Covington* v. *Powell*, 2 Metcalf's (Kentucky) Reports, 228;) and that, whenever there has been a decision apparently in conflict with the general current of authorities in this respect, there has been (almost, if not quite, invariably) some peculiarity in the position or acts of one or both of the parties that seemed to call loudly for the intervention of the Court to set aside the transaction,— some element of fraud, oppression or extortion on the part of the party receiving the payment, or of peculiar liability to imposition on the part of the party making it, that seemed to justify viewing the case as an exception to the general rule.

Thus, in the case of the *Duc de Cadaval* v. *Collins*, 4 A. & E., 858, the Duke, who was ignorant of the English language, having been arrested at the suit of one Collins, an insolvent, for an alleged debt of large amount, which was purely fictitious, to procure his release, gave a written agreement for the payment of £500, and to give bail for the remainder of the sum claimed, and, in accordance with his agreement, paid the £500; and, in his suit to reclaim the payment, the jury found that Collins knew he had no claim against the plaintiff.

In *Pitcher* v. *Turin Plank Road Co.*, 10 Barb., 438, the plaintiff, an infant, being threatened with a suit for a penalty which both parties supposed to be given by statute, paid a certain sum on a compromise, and, on coming of age, brought suit to recover it back. The Court sustained the claim, remarking among other things :—"This is not a case of pure mistake of law. It was a compromise of a claim for a penalty which the law did not give." * * * * "The decision may well rest upon the ground that this is a case where the acts of the infant may be inquired into for the purpose of seeing whether they are beneficial to his interest or not."

Other cases, ancient and recent, establish the right to recover money paid with full knowledge of the facts, where there has been imposition, extortion, or an undue advantage taken of the party's situation;. e. g., as against a carrier who had refused to deliver goods without payment of an exorbitant remuneration. *Ashmole* v. *Wainwright*, 2 Q. B., 846 ; where money was paid by a mortgager in order to obtain possession of his title deeds, withheld by the mortgagee's attorney, under an unfounded claim of lien. *Wakefield* v. *Newton*, 6 Q. B., 276 ; where the plaintiff, a simple minded man, being alarmed by threats of exposure, and taken into a room by himself, agreed to refer the matter to arbitrators, but afterwards declined taking any further part. *Sartwell* v. *Horton*, 28 Vt., 373 ; where an illegal fee was paid to one of the parties who was a sheriff, by the

clerk of the other, who, on being informed of it, disapproved of it and said it was an imposition. *Dew* v. *Parsons*, 2 B. & A., 562 ; where money was paid to liberate a raft of lumber detained in order to exact an illegal toll. *Chase* v. *Dwinal*, 7 Maine, 134; in which it is said by WESTON, J., that the general " rule applies where the party has a freedom in the exercise of his will and is under no such duress or necessity as may give his payments the character of having been made upon compulsion."

But these cases do not impeach, they rather confirm the general rule which is thus well expressed by Mr. Justice PATTERSON, in the case of the *Duc de Cadaval* v. *Collins*, *ubi supra*, " where there is *bona fides*, and money is paid with full knowledge of the facts, though there be no debt, still it cannot be recovered back." *Exceptio probat regulam.* Chancellor KENT says, in *Lyon* v. *Richmond*, 2 Johns. Ch. Rep., 51 ; — " Courts do not undertake to relieve parties from their acts and deeds fairly done on a full knowledge of facts, though under a mistake of the law. Every man is to be charged at his peril with a knowledge of the law ; there is no other principle which is safe or practicable in the common intercourse of mankind."

In *Clarke* v. *Dutcher*, 9 Cowen, 674, the Court review the various *dicta* and decisions which have given rise to the doubt, that has sometimes been expressed, whether *ignorantia legis* may not furnish a ground of repetition as well as ignorance or mistake of fact, and SUTHERLAND, J., in rendering the judgment, declares that "the principle upon which courts refuse to relieve against mistakes in law, is that in judgment of law there is no mistake ;" every man being held for the wisest reason to be cognizant of the law. The act, therefore, against which the party seeks relief is his own voluntary act, and he must abide by it." In that case, the plaintiff's rent was reserved in sterling money, the value of which, in currency, was fixed by statute, but the plaintiff, acting under an erroneous impression that £4,14s currency was the legal value of £2,10s sterling, settled his rent at that

rate, and was held not entitled to recover the excess above the true rate.

In *Peterborough* v. *Lancaster*, 14 N. H., 383, a sum of money had been paid by one town to another for the support of a pauper, and it turned out that the town making the payment was not legally liable to the town receiving it, and the attempt was to recover it, with other sums confessedly due from the town to which the pauper belonged, on the ground that it might be reclaimed from the plaintiffs by the town which made the payment. Held, not recoverable, GILCHRIST, J., remarking in the outset, that the maxim " *ignorantia legis neminem excusat* is a fundamental one, and has always been received as an elementary principle of the common law, with some few exceptions, for many years; it is an illustration of the tendency of the common law to aim at practical good rather than theoretical perfection, and to furnish a rule for the guidance of men in the common business of life."

Touching the cases cited for the plaintiffs from Connecticut, it would, perhaps, be sufficient to remark that the same Court in a later decision thus fully recognizes the rule which must govern the case at bar, as follows :—" Now the rule is perfectly well settled that a person who voluntarily pays money upon a claim of right with full knowledge of all the facts in the case, and in the absence of all fraud and all duress, cannot recover it, although there was no sufficient consideration, and the money was paid under protest." *Sheldon* v. *School District*, 24 Conn., 88.

But besides this, in *Northrup* v. *Graves*, 19 Conn., 547, (the case specially relied on by the plaintiffs' counsel in support of his views,) while some of the *dicta* go far to sustain his position, the Court expressly say, " we do not decide that money paid by a mere mistake in point of law can be recovered back ;" and it appeared, by the admissions of the defendant there, that he was cognizant of the mistake into which the plaintiffs were falling when they paid the

money, and so ought not to have received and could not conscientiously retain it.

A simple reference to some of the numerous cases where the general rule has been recognized or enforced, and the grounds of it stated, will answer all the purposes of further discussion. *Lowry* v. *Bourdieu*, 4 Doug., 471; *Bilbie* v. *Lumley*, 2 East, 469; *Knibbs* v. *Hall*, 1 Esp., 84; *Brown* v. *McKinally*, 1 Esp., 279; *Stevens* v. *Lynch*, 12 East, 38; *Brisbane* v. *Dacres*, 5 Taunt., 144; *Mowatt* v. *Wright*, 1 Wend., 355; *Martin* v. *Morgan*, 1 Brod. & Bing., 289; *Directors of the Midland, &c., Rail Co. of Ireland* v. *Johnson*, 6 H. of Lords Cases, 798; *Benson* v. *Monroe*, 7 Cush., 131; *Norton* v. *Marden*, 15 Maine, 45; *Fellows* v. *School District*, 39 Maine, 559.

The most that can be said for the town of Livermore, is that they paid these bills under a mistake as to the legal consequences of facts which were within their knowledge. There was no fraud nor extortion practiced by the defendants. The plaintiffs, after mature deliberation, admitted the claim which was presented in unquestioned good faith, and they cannot now be relieved from the consequences of their own voluntary acts.

*Judgment for defendants.*

APPLETON, C. J., KENT, DICKERSON and DANFORTH, JJ., concurred.