Blewett vs. McRae and others.

---

BLEWETT, Respondent, vs. McRAE and others, Appellants.

*September 7 — October 2, 1894.*

*Contracts: Purchase of land jointly with vendor's agents: Default in payments: Recovery of money paid: Fraud: Rescission.*

1. Plaintiff and defendants agreed to purchase certain land, he taking a half interest and they the other half. Defendants paid the earnest money and took a receipt from the vendor, specifying when subsequent payments should be made and providing that in case of default in any payment said earnest money should be forfeited, time being of the essence of the contract. Plaintiff afterwards paid to defendants, who were agents of the vendor, a sum to balance the earnest money paid by them, and also his half of the next payment, and the same was applied by them accordingly. Plaintiff thereafter failed and refused to make further payments, and defendants completed the purchase and sold the land again at a loss. *Held*, that plaintiff could not recover from them the amount paid by him, as money had and received to his use.

2. Defendants' concealment of the fact that they were to receive a commission on the sale did not entitle plaintiff to recover the amount paid by him, no fraud having been practiced on him, and it appearing that they were to take an interest in the land only in case plaintiff's original associate failed to do so. *Grant v. Hardy*, 33 Wis. 668, distinguished.

APPEAL from the Circuit Court for *Douglas* County.

On March 10, 1891, the defendants were copartners engaged in the business of buying and selling real estate for

others upon commission, in West Superior. Among others, they had four lots, belonging to one Stowe, for sale at the price of $8,800. On that day the plaintiff and one Anderson called upon the defendants and were shown by them various pieces of property they had for sale, including the four lots in question. Anderson said, in effect, to the plaintiff, in the presence of the defendants, that any deal he made with the defendants he (Anderson) would take a half interest in it, and thereupon he left for home. The plaintiff thereupon concluded to purchase a half interest in said lots, hoping that said Anderson would take the other half interest. The defendants agreed to take the other half interest in case Anderson eventually failed to do so. Thereupon, and on March 13, 1891, the defendants paid to Stowe $500 as an earnest and partial payment for said lots, and took from him a receipt of the same, wherein it was recited that the defendants therein agreed to pay for said lots as follows, in addition to the $500 so paid down, to wit, $500, March 16, 1891; $1,000, March 19, 1891; $3,300, April 6, 1891, upon the delivery of a good and sufficient deed of conveyance; and the balance of $3,500 one year from that date, with interest at eight per cent. per annum, payable semi-annually, to be secured by mortgage on the land; and that if the defendants failed in any of the things to be done by them in completing the purchase, time being of the essence of the contract, then the said earnest money so paid was to be forfeited. A duplicate copy of said contract was made, and one copy thereof thereupon delivered to the plaintiff.

The plaintiff then returned to his home in Fond du Lac, and thereupon sent to the defendants, inclosed in a letter, a draft for $1,000, with which the defendants were therein directed to cancel the plaintiff's obligations on said lot. He therein stated that he had had no opportunity to consult with Anderson as yet, but expected to see him the next

Tuesday; that, as he understood matters, one half of this $1,000 was to balance the earnest money so paid by the defendants, and the other half to pay his half of the payment to come due March 19, 1891,— he, the plaintiff, controlling one half interest in the four lots. That $1,000 was received by the defendants about March 16, 1891, and so applied.

On March 18, 1891, the plaintiff wrote defendants to the effect that he had been unable to see Anderson, and that they might sell the property at any time the opportunity presented itself, and that they should not allow the delay on Anderson's part to interfere; that at any time the defendants thought they could get their money out of the deal, not to stop to consult him; and wanting to know what kind of a deal he could make with the defendants for the two inside lots. On March 20, 1891, the defendants replied, favoring a division of the property, and saying that they were perfectly willing that Anderson should go in with the plaintiff if he would do so soon. On March 23, 1891, the plaintiff wrote to the defendants to the effect that he had just learned that the $1,700 which he had counted on to meet his obligation with the defendants April 6th could not be at hand, and that he had experienced no little anxiety and worry on account thereof, and asking the defendants if they could not help him out. On March 24, 1891, the defendants wrote to the plaintiff to the effect that they had no money on hand, and that he had not better depend on them to sell the property, but he better be prepared to close up the deal, and that they would do the best they could to dispose of the property to the best advantage. On April 4, 1891, the plaintiff wrote to the defendants to the effect that it would be impossible for him to meet his obligation with the defendants April 6th, and asking for a few days of grace. On April 5, 1891, the defendants wrote to the plaintiff to the effect that they

thought they could induce Stowe to extend the time of payment for four or five days, but that the plaintiff would have to hustle and get the money by the last of the week, as his failure had placed them in a peculiar position. On April 20, 1891, the plaintiff wrote to the defendants, in answer to a telegram, to the effect that he could not raise the money; that Anderson had given him the cold shoulder, and, as things then looked, he would soon be under water, and asking defendants to give him such a share in the property as the amount he had already paid would entitle him to. On April 25, 1891, the defendants wrote to the plaintiff to the effect that it would be impossible for them to do so; that, if the plaintiff failed to meet his obligation, they would be obliged to leave his money in until the property was sold to some one else. The defendants thereupon attempted to dispose of the property to one Sullivan, but failed to do so. On September 3, 1891, the defendants sold and conveyed the property to one Brooks for about $6,600.

On December 19, 1892, the plaintiff commenced this action to recover the $1,000 so paid in by him, as money had and received by the defendants. The answer of the defendants is a general denial. At the close of the trial the court directed a verdict in favor of the plaintiff and against the defendants for $1,023.33, and judgment for the same, with costs, was thereupon entered in favor of the plaintiff. From that judgment the defendants appeal.

*Frederick H. Remington,* for the appellants.

*John Brennan,* for the respondent, contended, *inter alia,* that the contract between plaintiff and defendants was a joint purchase, and therefore such a relation existed as required them to disclose to him that they were receiving a commission. *Grant v. Hardy,* 33 Wis. 668.

CASSODAY, J. The aggregate amount of the payments due on the purchase of the four lots from Stowe on and

prior to March 19, 1891, was $2,000.   The plaintiff sent to
the defendants the $1,000 mentioned as his half of such
payments, and to that extent canceled and discharged his
"obligations" to Stowe and the defendants on the con-
tract mentioned, and it was so applied by the defendants.
Beyond question that payment gave the plaintiff an equi-
table interest in the land which he might have enforced
had he made the other payments as he had agreed.   By the
terms of the contract, a failure to pay the second payment
when due operated as a forfeiture of the payment previ-
ously made, and time was made therein the essence of the
contract.   The plaintiff is not here seeking to enforce the
contract which he made, nor to enforce or obtain any in-
terest in the land, nor to reach any share of the proceeds
for which the land was sold, but to recover back the money
he so paid upon the contract, which he was unable further
to perform and therefore refused to perform.   Inability
and refusal to perform is certainly no ground for rescind-
ing a contract by the party so in default.

The only other ground upon which a rescission is sought
is that the defendants were to receive a commission of five
per cent. on the sale from Stowe, and concealed that fact
from the plaintiff.   The plaintiff knew that the lots be-
longed to Stowe, and that the defendants were his agents
in making the sale of them.   He testified that one of the
defendants informed him that they were to have no com-
missions.   If that was true, then the services of the defend-
ants were gratuitous — preposterous as that may seem to
be.   At the time the contract was made it was expected
that Anderson would take a half interest in the lots, and
the defendants were only to take the same in case Ander-
son failed, as he did.   No fraud was practiced upon the
plaintiff, and the case is clearly distinguishable from *Grant
v. Hardy*, 33 Wis. 668, relied upon by counsel.   In that
case Hardy, by collusion with the vendor, and false pre-

tenses practiced upon Grant, induced the latter to pay the entire purchase price and yet secure to Hardy the title to one fourth of the property without any payment from him. In the case at bar the plaintiff neither paid nor agreed to pay any commission, and hence the question of double commission is not involved.

As indicated, the action is purely one for money had and received. Such an action can only be maintained in a case where the defendant has received money which in equity and good conscience he ought to pay to the plaintiff. *Woodward v. Hill*, 6 Wis. 148; *Lawton v. Howe*, 14 Wis. 246; *Fay v. Lovejoy*, 20 Wis. 406; *Wells v. Am. Exp. Co.* 49 Wis. 229. This is not such a case. Had the defendants wrongfully refused to allow the plaintiff to share in the benefits of the contract, a different question would have been presented. *Colt v. Clapp*, 127 Mass. 476.

The facts in the record do not bring the case within the statute of frauds. *Whitman v. Lake*, 32 Wis. 189.

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded for a new trial.