Frederick vs. Douglas County and others.

FREDERICK, Respondent, vs. DOUGLAS COUNTY and others, Appellants.

*February 27 — June 11, 1897.*

*Counties: Enjoining payment of money: Action by one taxpayer on behalf of all: Parties: District attorney: Power of county board to employ another attorney: Recovery of money illegally paid: Estoppel: Voluntary payment.*

1. Under sec. 2604, R. S., a taxpayer, property owner, and voter in a county, regardless of the amount of taxes paid, may maintain an action on behalf of himself and all other taxpayers of the county to restrain the illegal payment of money by the county and its officers.

2. Where a county has a duly qualified and acting district attorney, the board of supervisors has no authority to employ another attorney to take charge of and conduct in the circuit court for that county tax litigation in which the county is interested, the district attorney being a constitutional officer, elected by the people and charged by sec. 752, S. & B. Ann. Stats., with the prosecution and defense of all actions or proceedings in that court in which the county is interested as a party.

3. The mere fact that public officers have voluntarily and with knowledge of the facts paid out money for services actually rendered in pursuance of an illegal and unwarranted contract will not prevent a recovery thereof in a proper action brought on behalf of the public. CASSODAY, C. J., dissents.

4. In an action brought by a taxpayer on behalf of all persons interested to restrain payment of an attorney illegally employed by a county board of supervisors to defend tax litigation against the county, and to recover back money already paid to such attorney, it appeared, among other things, that the attorney's employment became a matter of public notoriety within a short time after it was made; that both he and the county board acted in entire good faith; that he performed large and valuable services running through several months; that he had fully earned all the money which had been paid him; and that during all such time the plaintiff and his fellow taxpayers remained silent and allowed the services to be rendered and the money paid without objection. *Held,* that under all the circumstances a court of equity would not require the attorney to return the money.

Frederick vs. Douglas County and others.

APPEAL from a judgment of the circuit court for Douglas county: A. J. VINJE, Circuit Judge. *Affirmed in part; reversed in part.*

This action was commenced November 16, 1895, by the plaintiff, for himself and all other taxpayers of said county, to restrain the county and its officers from paying to the defendant *H. H. Grace,* or issuing warrants to him for the payment of, anything whatever for or on account of his services as attorney, rendered or to be rendered to the county, and to compel the said *Grace* to pay back to the county $2,012, which had previously been paid to him. The defendants having severally answered, and the cause having been tried, the court found the facts in effect as follows:

Prior to January 1, 1895, John A. Murphy was the duly elected, qualified, and acting district attorney of said county. Charles J. Monson was the duly elected, qualified, and acting district attorney of that county from January 1, 1895, to July 5, 1895, when he died; and H. C. Sloan was duly appointed as his successor, and has been the duly qualified and acting district attorney of said county since July 17, 1895, and is still such district attorney.

January 23, 1895, the board of supervisors of said county being duly convened, there was introduced, without the request and knowledge of the then district attorney, a resolution as follows: " Resolved, that *H. H. Grace* is hereby employed to assist the district attorney in the prosecution and defense of all tax cases and civil actions pending or hereafter commenced, in which the county of *Douglas* is a party." Said resolution was, upon motion, duly referred to a committee of three, with full power to act. Two members of said committee informed the district attorney that they had employed said *Grace* to take charge of the tax cases against the county. The district attorney expressed his pleasure at being relieved of said cases for the time being. February

16, 1895, said committee completed arrangements with *Grace* to take charge of and conduct the tax cases for the time being, under an agreement whereby *Grace* should be paid the same compensation or fees that he would charge other clients for similar work. Under this agreement, *Grace* began work on the tax cases February 16, 1895. The reason the board so hired *Grace* was that they did not think Monson competent to properly conduct the defense of said cases; and that he did not have sufficient time to properly attend to them. Monson was about thirty-one years of age, and had been practicing law four or five years, and had only a limited experience in tax litigation. The board allowed two bills presented by *Grace* for his services to April 18, 1895, for the aggregate amount of $225.

June 10, 1895, a resolution reciting that *Grace* had been employed to assist the district attorney in all cases commenced against said county was introduced and adopted by the board. Said resolution appropriated $1,000 to *Grace* in payment of the necessary expenses in the defense of the tax cases, the balance, if any, remaining from said sum after said cases were fully determined, to apply in payment of his services. At that time a large number of new cases had been begun, and were pending in the circuit court for Douglas county, against the county. The board, with the consent of Monson, then adopted a resolution to the effect that *Grace* was thereby retained as attorney for the county, to take charge of and defend all tax cases pending or thereafter commenced against the county or county officers, and the several county officers were thereby directed to turn over all papers relating to the same as soon as served, to enable him to keep a proper record of the same. August 17, 1895, a resolution was passed by said board appropriating $1,500 to *Grace* for fees, costs, and expenses in said tax cases. Said *Grace* was paid the several amounts so allowed in the aggre-

gate to the amount of $2,615, before the commencement of this action, including amounts disbursed by him. ·

On November 6, 1895, the board, knowing that 188 tax cases were then pending, and with the consent of the district attorney, agreed with *Grace* to allow the balance of his bill of $1,461.80, for services performed prior to November 1, 1895; that he be employed to assist the district attorney in looking after all tax cases then pending against the county, and all cases that might be commenced against the county for the term of one year commencing November 1, 1895; that his compensation therefor be fixed at the sum of $4,000, which was to be in full for his legal services and that of his stenographer during said year, but not to include disbursements; and that warrants be drawn by the chairman and clerk on the county treasurer, payable to *Grace* quarterly, in advance, for the sum of $1,000 each.

Neither Monson nor Sloan at any time made application to the board for assistance, or requested to be relieved from the defense of said tax cases, but, on the contrary, the board acted on its own motion, and Monson and Sloan each acquiesced. The county had paid *Grace*, for services rendered by him in defending cases against said county pending in the circuit court, above disbursements, in the aggregate the sum of $2,012.

As conclusions of law, the court found, in effect, that the board had no power or authority to employ *Grace* to take charge of and defend the tax cases mentioned, or to assist the district attorney in the defense of said cases, and bind the county for the value of such services; that such employment was illegal and void, both for the year prior and the year subsequent to November 1, 1895; that *Grace* was a trustee of the county for the amounts received by him from said county for such services, in all to the sum of $2,012, and that he account for and pay over the same to said county;

Frederick vs. Douglas County and others.

.and that an injunction should be granted in accordance with the prayer contained in the amended complaint.

From the judgment entered thereon accordingly, and the whole and every part thereof, the defendants bring this appeal.

For the appellants there was a brief by *Butler & Grace, H. C. Sloan,* and *C. R. Fridley,* and oral argument by *A. L. Sanborn* and *H. H. Grace.* They contended, *inter alia,* that the county board had power to employ counsel to assist the district attorney in civil cases in the circuit court. *Smith v. Mayor of Sacramento,* 13 Cal. 533; *Hornblower v. Duden,* 35 id. 664; *Scollay v. Butte Co.* 67 id. 249; *Detroit v. Whittemore,* 27 Mich. 280; *State v. Paterson,* 40 N. J. Law, 186; *Taylor v. Umatilla Co.* 6 Oreg. 394; *McCabe v. Comm'rs of Fountain Co.* 46 Ind. 380; *Comm'rs of Cass Co. v. Ross,* id. 404; *Comm'rs of Ripley Co. v. Ward,* 69 id. 441; *Chester Co. v. Barber,* 97 Pa. St. 455; *State ex rel. De Lany v. Franklin Co.* 21 Ohio St. 648; *Clough v. Hart,* 8 Kan. 487; *Thatcher v. Jefferson Co.* 13 id. 182; *Doster v. Howe,* 28 id. 353; *Franklin Co. v. Layman,* 145 Ill. 138; *City Nat. Bank v. Presidio Co.* 26 S. W. Rep. 775; *Jordon v. Osceola Co.* 59 Iowa, 388; *Tatlock v. Louisa Co.* 46 id. 138; *Taylor Co. v. Standley,* 79 id. 666.

*T. L. McIntosh,* for the respondent, to the point that the county board had no authority to employ the defendant *Grace* to conduct the tax litigation in question, cited *Orton v. State,* 12 Wis. 509; *Randall v. State,* 16 id. 340; *Tenney v. State,* 27 id. 387; *State v. Duff,* 83 id. 291; *Beal v. St. Croix Co.* 13 id. 500; *McDonald v. Milwaukee Co.* 41 id. 642; *Montgomery v. Jackson Co.* 22 id. 69; *Eagle River v. Oneida Co.* 86 id. 269; *Clough v. Hart,* 8 Kan. 487; *Morrill v. Douglas,* 14 id. 293, 306; *Platte Co. v. Gerrard,* 12 Neb. 244; *Cuming Co. v. Tate,* 10 id. 193; *Lyddy v. Long Island City,* 104 N. Y. 218; *Miller v. Embree,* 88 Ind. 133; *State v. Paterson,* 40 N. J. Law, 186; *Ramson v. New York,*

24 Barb. 226; Tiedeman, Mun. Corp. 176; *Bryan v. Page*, 51 Tex. 532.

CASSODAY, C. J. 1. It is contended that although the plaintiff, *Frederick*, is a taxpayer, property owner, and voter in the county, yet that the amount of taxes paid by him was so small that he should not be allowed to maintain this action. The statute provides that "when the question is one of a common or general interest of many persons, or when the parties are very numerous, and it may be impracticable to bring them all before the court, one or more may sue or defend for the benefit of the whole." R. S. sec. 2604. "This statute has been construed as merely re-enacting the rules which prevailed in equity, and which otherwise might have been held to be abolished by the Code." *Day v. Buckingham*, 87 Wis. 220. The action in the case at bar "is one of a common or general interest of many persons." It is for the benefit of the taxpayers of the county, and may properly be brought, as this is, by one taxpayer "for himself and all taxpayers of said county." *Id.; Nevil v. Clifford*, 55 Wis. 161; *Willard v. Comstock*, 58 Wis. 565; *Bay Land & Imp. Co. v. Washburn*, 79 Wis. 423. We must hold that there was no error in not dismissing the complaint for want of a proper party plaintiff.

2. The more important question is whether the county had authority to employ the defendant *Grace* as attorney to take charge of and conduct the tax suits mentioned. It is conceded that the county had a district attorney, as prescribed by law, during the period covered by such employment. "Counties are, at most, but local organizations, which, for the purposes of civil administration, are invested with a few functions characteristic of a corporate existence. They are local subdivisions of the state, created by the sovereign power of the state, of its own sovereign will, without the particular solicitation, consent, or concurrent action

Frederick vs. Douglas.County and others.

of the people who inhabit them. . . . They are purely
auxiliaries of the state; and to the general statutes of the
state they owe their creation, and the statutes confer upon
them all the powers they possess, prescribe all the duties
they owe, and impose all liabilities to which they are sub-
ject.   Considered with respect to the limited number of
their corporate powers, the bodies above named rank low
down in the scale or grade of corporate existence, and hence
have been frequently termed ' *quasi* corporations.' "   1 Dil-
lon, Mun. Corp. §§ 23, 25; 1 Beach, Pub. Corp. § 8; *Beal v.*
*St. Croix Co.* 13 Wis. 500; *Hoffman v. Chippewa Co.* 77 Wis.
214.   The statutes prescribe the general powers of counties.
S. & B. Ann. Stats. secs. 650, 652, 669, 670, 694.   One of
these sections provides that the county board shall have the
power "to represent the county, and to have . . . the
management of the business and concerns of the county in
all cases where no other provision shall be made."   S. & B.
Ann. Stats. sec. 669, subd. 6.   Another of these sections, as
amended, provides that "the county board at their annual
meeting in November shall fix the amount of salary which
shall be received by every county officer, including county
judge, who is to be elected in the county during the ensuing
year, and is entitled to receive a salary payable out of the
county treasury, and the salary so fixed shall not be in-
creased or diminished during his term of office.   All salaries
shall be paid out of the county treasury monthly, at the end
of each month.   All salaries, the amounts whereof have
heretofore been declared and fixed by the county board at
any time, or heretofore established by law, shall be and re-
main the salaries of such officers until the county board
shall fix the amounts thereof in accordance with the pro-
visions of this section, and when such amount is once fixed
by the county board, it shall be and remain as the salary of
such officer until changed as herein provided."   S. & B. Ann.
Stats. sec. 694; Laws of 1893, ch. 225.   The statute author-

izes the circuit court to appoint a suitable person to perform the duties of the district attorney, where there is no such officer for the county, or when he is absent or has been of counsel for or is near of kin to the accused. R. S. sec. 750. "The district attorney shall receive for compensation the salary fixed by the county board, *and no more*." R. S. sec. 751. The duties of the district attorney are prescribed by statute, and they include the defending of all the tax cases in question in the circuit court for Douglas county. S. & B. Ann. Stats. sec. 752. The circuit judges, within their respective circuits, are authorized, in their discretion, to appoint counsel to assist the district attorney in the prosecution of persons charged with certain crimes. S. & B. Ann. Stats. sec. 752*a; Weisbrod v. Winnebago Co.* 20 Wis. 419. But it is not permissible for private persons to employ and pay such assistant. *Biemel v. State,* 71 Wis. 444; *Bird v. State,* 77 Wis. 276; *Richards v. State,* 82 Wis. 177; *State v. Russell,* 83 Wis. 330. The statutes also provide that in counties containing 100,000 inhabitants the district attorney may nominate and appoint assistants. S. & B. Ann. Stats. sec. 752*b;* Laws of 1893, ch. 94. But nowhere in the statutes do we find any authority for the county board to employ counsel to take charge of and conduct tax litigation in the circuit court, as in the case at bar; and, as indicated, the board only had such powers as were expressly granted by statute, or necessarily implied therefrom. *Meinzer v. Racine,* 68 Wis. 245, 246, and cases there cited. This court has expressly held that "the county board of supervisors has no authority to employ, at the expense of the county, an attorney to aid the district attorney in a criminal prosecution." *Montgomery v. Jackson Co.* 22 Wis. 69. In a later case this court held, in effect, that neither the sheriff *nor the county board* had any authority to employ counsel at the expense of the county to attend the hearing upon *habeas corpus,* in behalf of a person detained on a criminal accusation. *Mc-*

*Donald v. Milwaukee Co.* 41 Wis. 642. These rulings have received sanction in later cases. *Manitowoc Co. v. Sullivan,* 51 Wis. 118; *Cutts v. Rock Co.* 58 Wis. 642; *State v. Duff,* 83 Wis. 291.

The district attorney was a constitutional officer, chosen by the electors of the county. Const. art. VI, sec. 4. He took his office *cum onere;* and the county board had no authority to employ *Grace* to take charge of and conduct the tax litigation mentioned, in the circuit court for Douglas county. For the reasons given, we are all agreed that the county was properly enjoined from making any further payments to *Grace.*

3. The question recurs whether *Grace* can be compelled to pay. back to the county the $2,012 which he actually received for services actually rendered. There is no question but that the county was involved in a very large and unusual amount of tax litigation, and that the district attorney was unable to attend to all the litigation of the county as it should be attended to, and that *Mr. Grace* rendered a very large amount of very valuable services for the county, and that he ought, in equity and good conscience, to have a reasonable compensation for such services actually rendered. We are all agreed that, upon the facts and circumstances of this case, *Mr. Grace* cannot be compelled to pay back the money he actually received for such services before the commencement of this action. A majority of the court seem to reach such conclusion on the ground that the action is barred by laches; and I have requested them to file an opinion herein, giving their reasons for such conclusion.

It is obvious that, if the county could not recover back the money, then the plaintiff, as a taxpayer, cannot compel such repayment. The fact that *Grace* claimed the money for services actually rendered, and that the county voluntarily paid the same, with full knowledge of all the facts, under the circumstances mentioned, is sufficient, in my judg-

ment, to bar the county from such recovery. Such is the general rule of law. *Farmer v. Arundel,* 2 W. Bl. 824; *Brisbane v. Dacres,* 5 Taunt. 143; *Bilbie v. Lumley,* 2 East, 469; *Benson v. Monroe,* 7 Cush. 125; *Livermore v. Peru,* 55 Me. 469; *McCrickart v. Pittsburgh,* 88 Pa. St. 133; *Peebles v. Pittsburgh,* 101 Pa. St. 304. And this is the rule even where the party paying is under no legal obligations to pay, and where the party receiving has no legal right to recover. *Id.* A learned author, speaking of laches, acquiescence, payment, and retention of the consideration as grounds of estoppel, says: "As experience shows that the officers of public and municipal corporations do not guard the interest confided to them with the same vigilance and fidelity that characterize the officers of private corporations, the principle of ratification by laches or delay should be more cautiously applied to the former than to the latter. But the principle applies to both classes of corporations, as well as to natural persons. The general doctrine is undoubted that there is ordinarily no estoppel in respect to acts which are in violation of the constitution or of an act of the legislature, or which are obviously, and in the strict and proper sense of the term, *ultra vires.* . . . We mean by it, as here used, the want of legislative power, under any circumstances or conditions, to do the particular act in question." 1 Dillon, Mun. Corp. (4th ed.), § 548.

As indicated, the county, with full knowledge of the facts, voluntarily paid the money, and is not here asking to have it paid back. It is obvious, from the statutes cited upon the other branch of the case, that under certain circumstances a county may be legally required to pay counsel for assisting the district attorney in legal controversies. The statute, however, did not authorize such payment in the case at bar. But there was no statute prohibiting such payment, nor was such payment contrary to any principle of the common law or of good morals. So far as this branch of the case is con-

cerned, the action is essentially an action for money had and received. In all such actions, in the absence of mistake, deceit, fraud, duress, oppression, or undue influence, the party seeking to recover, or in whose behalf recovery is sought, must be equitably entitled to a repayment of the money, or no recovery can be had or repayment compelled. Thus, it has been held that "taxes collected under a state statute which is afterwards declared unconstitutional cannot be recovered back if no protest or objection is made against the payment of such taxes." *Taylor v. Board of Health*, 31 Pa. St. 73; *S. C.* 72 Am. Dec. 724. So, it has been held that " a collector of the revenue is not personally liable in an action to recover back an excess of duties paid as collector, and by him, in the regular or ordinary course of his duty, paid into the treasury of the United States; he (the collector) acting in good faith, and under instructions from the treasury department, and no protest being made at the time of payment, or notice not to pay the money over, or intention to sue to recover back the amount given him." *Elliott v. Swartwout*, 10 Pet. 137. This rule applies as well to a payment made by one municipal corporation to another municipal corporation, as to a payment by one individual to another. *Board of Comm'rs of Macon Co. v. Board of Comm'rs of Jackson Co.* 75 N. C. 240.

The same principle is well illustrated by a case in this court. *Fay v. Lovejoy*, 20 Wis. 403. That case was under a statute making usurious contracts void as to the agreement for interest, but valid as to the principal sum loaned. The question involved was whether payments made *as interest* could be recovered back, or applied as part payment of the principal sum loaned, and this court held that they could not. In that case, DIXON, C. J., giving the opinion of the court, said: " All the authorities agree that, when interest money has been paid and applied as such with the consent of the borrower, only the illegal excess can be recovered back.

Frederick vs. Douglas County and others.

The reason is that equity never favors a forfeiture, and will not, unless bound down by statute, lend its aid to enforce one, but will, as a condition of relief, hold the party to the performance of that which is just and equitable. . . . If, therefore, he has paid the interest, a court of equity will not aid him to get it back, *within the lawful rate*, though the lender had no action to compel its payment. And the rule is the same in an action at law for money had and received, to recover it back; or if the borrower set off the interest money paid against the principal sum in a legal action of the lender to recover that. Money had and received, though legal in form, is in its nature an equitable remedy, and lies only where the defendant has received money which, *ex æquo et bono*, he ought to refund. The fact, therefore, that the statute forfeits all interest, or provides that no interest shall be recovered, does not give the borrower a right to recover it back, where it has once been paid. Many of the cases in which it is held that there can be no such recovery arose under statutes which forfeit both principal and interest. It was competent for the defendant in this case to waive the forfeiture and pay the interest; and, so far as he has done so, the payment within the rate allowed by law will not be disturbed." *Fay v. Lovejoy*, 20 Wis. 405. To the same effect, *Blewett v. McRae*, 88 Wis. 280; *Birkhauser v. Schmitt*, 45 Wis. 316.

*By the Court.*— That portion of the judgment adjudging that *Mr. Grace* holds the $2,012 as trustee of the county, and requiring him to account for and pay over the same to the county or into court for the benefit of the county, is reversed, and the judgment in all other respects is affirmed, but without costs to either party in this court, except that the appellants are to pay the fees of the clerk of this court.

WINSLOW, J. As indicated in the foregoing opinion of the chief justice, all the members of this court agree that

*Mr. Grace* cannot be compelled to pay back the money he has actually received for the legal services rendered by him to the county prior to the commencement of this action, but the remaining members of the court do not agree with the chief justice as to the legal grounds upon which such decision should be based, and I have been requested by my colleagues to present, as best I may, their views upon that subject.

In our judgment, it would be dangerous to hold that because *Mr. Grace* had actually rendered services, and the county had voluntarily paid for the same with knowledge of the facts, such money so paid could not be recovered. There are many cases which hold that, as between man and man, money paid voluntarily, with knowledge of all the facts, and without fraud or duress, cannot be recovered merely on account of ignorance or mistake of the law. A number of these cases are cited in the opinion of the chief justice, and it is not my province to combat this principle. This is simply the doctrine of voluntary payment. It is frequently applied to the payment of illegal taxes. It is founded upon the general principle that a man may do what he will with his own. He may give it away, or buy his peace; and, if he does so with knowledge of the facts, he is generally remediless. But public officials do not stand upon the same basis. They are not dealing with their own. They are trustees for the taxpayers, and, in dealing with public funds, they are dealing with trust funds. All who deal with them know also that the public officials are acting in this trust capacity. To hold that, when public officers have paid out money in pursuance of an illegal and unwarranted contract, such moneys cannot be recovered in a proper action brought upon behalf of the public, merely because the payment has been voluntarily made for services actually rendered, would be to introduce a vicious principle into municipal law, and a principle which would necessarily sweep

away many of the safeguards now surrounding the administration of public affairs. Were this, in fact, the law, it can readily be seen that public officials could at all times, with a little ingenuity, subvert and nullify that wholesome principle of the law which prohibits their spending the public funds for illegal purposes. All that would be necessary to be done would be to make the contract, have the labor performed, pay out the money, and the public would be remediless. We cannot approve of such a doctrine. The rules of law concerning ratification and estoppel, as applied to the illegal or unauthorized acts of public officials, are simple and well understood. A municipal corporation may undoubtedly ratify an unauthorized contract made by its agents, which is within the general scope of its corporate powers; but it is equally certain that it cannot ratify such unauthorized acts of its agents as are beyond its scope, or such contracts as it had no power to make originally. *Trester v. Sheboygan*, 87 Wis. 496; *Koch v. Milwaukee*, 89 Wis. 220. Ratification and estoppel are of very much the same nature, and the principles which apply to ratification substantially apply also to estoppel. As said by Mr. Dillon in the passage quoted by the chief justice: "The general doctrine is undoubted that there is ordinarily no estoppel in respect to acts which are in violation of the constitution or of an act of the legislature, or which are obviously, and in the strict and proper sense of the term, *ultra vires*. . . . We mean by it, as here used, the want of legislative power, under any circumstances or conditions, to do the particular act in question." This passage, we believe, expresses the law with clearness. This court decides in the present case that "the county board had no authority to employ *Mr. Grace* to take charge of and conduct the tax litigation mentioned." They had no authority under any circumstances then existing, because they had a district attorney qualified and acting. Therefore the employment of *Mr. Grace* was

to the full extent an act beyond their power, and hence incapable of ratification.

It is not difficult to find cases holding to the full extent the doctrine that where public officers have made an illegal appropriation of public money, and the money has been paid, it may be recovered in a proper action brought either by the corporation or by taxpayers on behalf of the public. Such actions have generally been actions in equity brought to restrain the further misappropriation of funds, and as an incident of full relief to recover back moneys already paid; and it may be stated as a uniform rule that in such cases such moneys may be recovered back, especially where there is any ground to charge fraud, corruption, or concealment in the transaction. A case in point is that of *Russell v. Tate*, 52 Ark. 541, 7 L. R. A. 180, in which an illegal appropriation of town funds was made to aid in completing a county court house. A part of the appropriation was paid over immediately. As said in the opinion: "The appropriation was made, and the warrant drawn, and the money paid by the treasurer, before an attorney could have comprehended the situation and written the caption of a complaint." And the court held that the amount already paid could be recovered, as well as that there should be an injunction against any further payment, thus doing complete justice in one action. Other cases in which voluntary payments by municipal officials have been recovered back may be cited, as follows: *Demarest v. New Barbadoes*, 40 N. J. Law, 604; *Weeks v. Texarkana*, 50 Ark. 81; *Tacoma v. Lillis*, 4 Wash. 797, 18 L. R. A. 372. The principle is also recognized in *Willard v. Comstock*, 58 Wis. 565. But while we believe it to be salutary and a correct principle of law to hold that moneys paid out by municipal officials in violation of law may be recovered from the recipient in an action seasonably brought, especially where the transaction is marked by haste, fraud, collusion, or concealment, we believe there

Frederick vs. Douglas County and others.

are cases in which the circumstances are such that a court of equity ought not to decree the return of money merely because the appropriation thereof was unauthorized, and such a case we believe to be before us now.

The evidence and the findings show that *Mr. Grace's* employment began in January, 1895, and it was a matter of public notoriety, and the plaintiff himself and presumably all taxpayers who kept track of the public proceedings knew that he was employed as early as the spring of 1895; that he performed large and valuable services, for which he was from time to time paid; and that not only he, but the county board, acted in entire good faith in the matter. There was no haste and no evidence of collusion or concealment. *Mr. Grace's* services ran through a number of months, and he undoubtedly has fully earned all the money which has been paid him. During all this time the plaintiff and his fellow taxpayers remained silent, and allowed the services to be rendered and the money to be paid. They took no action until the latter part of November, 1895. Then they came into a court of equity, and asked for the stoppage of all payments in the future, and to this they are undoubtedly entitled. But he who comes into a court of equity must do equity. Could it, under any view of the circumstances, be said to be equitable to compel *Mr. Grace* to pay back the money which he received for long and valuable labors, rendered honestly and in good faith, the benefit of which the corporation has received, and concerning which the taxpayers of Superior were, or ought to have been, fully informed during their entire progress? Were a court of equity to make this judgment under the circumstances, we should regard it as having become an engine of oppression, rather than an instrument of justice. We do not rest this decision entirely upon the ground that the remedy has been lost by laches, or that the county has become estopped, but upon the ground that under all the circumstances, the plaintiff having invoked the relief

of a court of equity, that court, in granting the relief, will not take away the fruit of honest labor. *Macon v. Huff*, 60 Ga. 221.