MARINETTE COUNTY, Respondent, vs. SCHMITT, Appellant.

*December 6, 1945—February 15, 1946.*

The cause was submitted for the appellant on the brief of *John E. Faller* of Marinette, and *Lehner & Lehner, Adolph P. Lehner,* and *Howard N. Lehner* of Oconto Falls, and for the respondent on the brief of *N. B. Langill,* district attorney.

FRITZ, J.    In this action for money had and received, plaintiff seeks to recover from defendant $2,695 received by him from plaintiff for services which he claims and testified he actually rendered for plaintiff as the court reporter of the

Marinette county court. Such an action for money had and received is deemed to be equitable in its nature; and, as is stated in 19 Am. Jur., Equity, p. 168, sec. 195,—

"It is said that the rights of the parties in such an action are to be determined as they would be upon a bill in equity and that the defendant may rely upon any defense which shows that in equity and good conscience the plaintiff is not entitled to recover in whole or in part."

That is the well-established rule in actions for money had and received. As Mr. Chief Justice CASSODAY said in *Frederick v. Douglas County,* 96 Wis. 411, 421, 71 N. W. 798, "In all such actions, in the absence of mistake, deceit, fraud, duress, oppression, or undue influence, the party seeking to recover, or in whose behalf recovery is sought, must be equitably entitled to a repayment of the money, or no recovery can be had or repayment compelled." And in an opinion concurring in the application of that rule in deciding the case but disagreeing "with the chief justice as to the legal grounds upon which such decision should be based," Mr. Justice WINSLOW said,—

"This court decides in the present case that 'the county board had no authority to employ Mr. Grace to take charge of and conduct the tax litigation mentioned.' " (p. 424.)
"But while we believe it to be salutary and a correct principle of law to hold that moneys paid out by municipal officials in violation of law may be recovered from the recipient in an action seasonably brought, especially where the transaction is marked by haste, fraud, collusion, or concealment, we believe there are cases in which the circumstances are such that a court of equity ought not to decree the return of money merely because the appropriation thereof was unauthorized, and such a case we believe to be before us now. . . . But he who comes into a court of equity must do equity. Could it, under any view of the circumstances, be said to be equitable to com-

pel Mr. Grace to pay back the money which he received for long and valuable labors, rendered honestly and in good faith, the benefit of which the corporation has received, and concerning which the taxpayers of Superior were, or ought to have been, fully informed during their entire progress? Were a court of equity to make this judgment under the circumstances, we should regard it as having become an engine of oppression, rather than an instrument of justice. We do not rest this decision entirely upon the ground that the remedy has been lost by laches, or that the county has become estopped, but upon the ground that under all the circumstances, the plaintiff having invoked the relief of a court of equity, that court, in granting the relief, will not take away the fruit of honest labor." (pp. 425, 426.)

In *Murphy v. Paull,* 192 Wis. 93, 98, 101, 212 N. W. 402, the court said, in affirming a judgment dismissing an action to recover moneys of a village illegally paid out by its officers,—

"Courts of equity sit to redress wrongs causing damage. When no damage is shown they will not order reparation of moneys equitable though irregularly disbursed. The penalty provided for a violation of a statute cannot be imposed in a taxpayer's action. So if the taxpayers have sustained no loss by an irregular act, a court of equity has no function to perform. It may enjoin an irregular act. It may restore a loss. But it cannot punish for a past violation of the statute. To require a repayment of that which was equitably paid would be to render a court of equity an engine of injustice, as was said in *Frederick v. Douglas County,* 96 Wis. 411, 71 N. W. 798. . . . It seems to be quite well established from our own decisions as well as from decisions in other states and in accordance with principles announced by textbook writers that in a matter in which the municipality has power to act, where there has been a completed transaction, though irregular and unlawful, a court of equity will not require restoration of the money paid unless some loss can be shown to the taxpayers. Because to do so would be grossly inequitable. . . . Courts

will not order a refund of moneys illegally paid out where the municipality has the power to do the thing that is done, and where no loss results to the taxpayers, even though there are statutory irregularities in the manner of doing, as in the case of *Ellefson v. Smith,* 182 Wis. 398, 196 N. W. 834." See also *Shulse v. Mayville,* 223 Wis. 624, 630, 271 N. W. 643.

In the case at bar, sec. 25, ch. 110, Laws of 1929, in connection with authorizing the county judge to fix, as he did, the reporter's compensation at $10 for each day's, and $5 for each half day's attendance, provided that, "The per diem compensation of said reporter shall be paid out of the treasury of Marinette county upon the certificate of the judge." In view of that provision, the reporter's compensation should have been paid only "upon the certificate of the judge," which means, of course, a certificate signed by the judge himself. Thereby it was evidently intended to protect the interests of the county by an audit of the reporter's charges by the judge who, by reason of his own knowledge as to the reporter's attendance would presumably be best informed and qualified to perform that duty. The judge was not authorized to either delegate or leave the performance of that duty, including his execution of the required certificate, to anyone else; and certainly not to the reporter who was adversely interested.

However, on the trial of this action there were proceedings to the following effect. In answer to the court's question, "There is no charge of fraud here, is there; no attempt to forge the signature of the judge," the plaintiff's counsel replied, "No, we have laid the action for money had and received. . . ." The defendant testified that the certificates prepared and signed by him—

"were for services in reporting proceedings in probate, juvenile, civil, and criminal matters coming before the county judge. I kept a record of my time spent in such work and the

certificates comprising Exhibit 'A' represent services that were actually performed and they were compiled from my records. . . . The certificates in both Exhibits 'A' and 'B' represent services actually performed by me as county court reporter, and the information on which the certificates were drawn was gleaned from my stenographic notebooks, from which I would prepare the certificates."

That testimony was neither controverted nor impeached in any respect on the trial. Instead it was corroborated by the county judge's testimony that,—

"The services represented by the exhibits in Exhibit 'A' in which Arnold Schmitt signed my name, I would say were performed, and I have absolute confidence in those certificates and I would not hesitate to sign them if they were presented to me now, and I would not hesitate to ratify the signatures of Mr. Schmitt now, and I am satisfied that the services were performed by him as court reporter. Throughout the years I have retained the same confidence and there is no question in my mind that the services represented by Exhibit 'A' were performed and I would not hesitate to ratify these now. . . . When I say that the services were rendered and the compensation due, it is an opinion based on my opinion of his work in the office, and also hearing the figures on the number of cases we have in all three or four jurisdictions, which strengthens my opinion. . . . I don't think I specifically authorized the use of my signature to orders for his own compensation but I did authorize him to affix my signature to various orders and documents. . . . I would not hesitate to authorize him to sign these certificates now except that it is irregular. . . . I believe he has earned this money and if he is required to pay it back, it is because of legal technicalities."

Thus there was conclusively established by uncontroverted evidence that defendant's services as court reporter and the rate of compensation therefor, as fixed by Judge HAASE, were authorized by the statute; that defendant's performance of such services and his charges therefor, as stated in the certifi-

cates, create legal liability on the part of the county to the defendant; that this liability was extinguished by the payments of county funds made to defendant by its officials, and consequently these payments did not result in any loss or damage to the county even though the making of such payments upon the certificates which had not been signed by the judge was unauthorized and irregular in that they were not issued as prescribed by the statute. However, although the issuance and payments thereof were not as prescribed by the statute, these transactions were not prohibited by any statute making them a criminal offense or imposing criminal penalty. As the transactions were not *malum prohibitum* they cannot be deemed to defeat defendant's right to receive the compensation owed for his services and to retain the compensation which he received therefor. Consequently, as the county received full consideration for the amounts paid to defendant without any fraud, deceit, or connivance on his part or any other county official or employee, and as no loss or damage resulted to plaintiff by reason thereof, even though the manner of certification or payment was irregular because it was not made as prescribed by statute, and as the transactions in relation thereto were not prohibited by any statute making them a criminal offense, the plaintiff is not entitled to have judgment in this action for money had and received for the repayment to plaintiff of the amounts received by defendant as the authorized compensation for the value of the services lawfully rendered by him for plaintiff.

*By the Court.*—Judgment reversed, and cause remanded with directions to enter judgment dismissing the complaint.

WICKHEM, J. (*dissenting*). While in the state of the record the position of defendant appeals to one's sympathy, I am of the view that cases involving a type of personal serv-

ice as to which ordinary pay-roll accounting is inadequate, and in respect of which special statutory provisions like sec. 25, ch. 110, Laws, of 1929, have been enacted are quite different from those cited in the majority opinion and call for a different rule. In the case of a court reporter, the only practicable way of establishing the fact and amount of his services is to have some officer who knows the facts certify them at a time when he recalls them, and by sec. 25 above referred to this duty is imposed upon the county judge. The purpose of the statute was to safeguard the county and to remove the possibility of a later dispute by a device that is at once simple and easy to comply with. The statute was disregarded. To permit defendant to retain the money under these circumstances appears to me to defeat the statutory purpose. The only action available to the county after payment of the money is one in restitution, and in this action it has the burden to establish that the services were not rendered. The very difficulty of proof in such a case was the occasion for the statute. Personal services of this sort leave behind them no tangible monuments which can be referred to as proof that the county got its money's worth, and there are not present the usual accounting safeguards applicable to the generality of employees. The statute took notice of the very situation presented here and was specifically addressed to it. I think it should be complied with as a condition to receiving or retaining payment for services.

I am authorized to say that Mr. Justice BARLOW concurs in this opinion.