DOUGLAS COUNTY, Respondent, vs. SOMMER, Appellant.

*January 13—February 2, 1904.*

*County board: Power to adjourn annual meeting: Sheriffs: Compensation: Illegal allowance: Action to recover: Money had and received: Discount on county orders: Damages.*

1. County boards have power to adjourn their annual meetings, for any reasonable and sufficient grounds, both as to time and place of adjournment.

2. A county board having power by statute to fix the salary of the sheriff of the county, may exercise that power at an adjourned session of its annual meeting.

3. An action in the nature of an action for money had and received can be maintained by a county against a sheriff to recover money paid to and received by him, in good faith, under a mistake of the law by all the interested parties.

4. Where a sheriff's compensation was by salary in lieu of all fees and compensation for services within his county, except for keeping and maintaining prisoners in the county jail, an allowance and payment to the sheriff of items for street car and railway fare of prisoners, in transporting them to and from the county jail, workhouse and the courts is unlawful, and the county can recover such amounts from the sheriff.

5. In an action against a sheriff to recover moneys illegally paid to him, it is error to include in the recovery against the sheriff items paid to a deputy sheriff under the sheriff's appointment, where the claim was presented to the county board in the deputy's name, and was audited, allowed, and county orders issued to the deputy, and paid to him personally.

6. To allow and pay a sheriff for services and disbursements in apprehending and returning fugitives from justice from without the state, without obtaining the certificate required by sec. 2, ch. 126, Laws of 1901, before the services were rendered, and for services in the unsuccessful pursuit of fugitives from justice within the state outside the sheriff's county, without having the certificate of the district attorney required by subd. 34, sec. 731, Stats. 1898, and without proof before the county board that the escape or pursuit were not the result of, or made necessary by the sheriff's carelessness or negligence, is an abuse of power by the county board, and their action is void.

7. Where, in an action on implied *assumpsit* by a county against

a sheriff to recover sums of money illegally paid him, it appeared that he had been paid in county orders, worth ninety per cent. of their face value, and that the sheriff realized only that amount thereon, the measure of recovery is the amount of money actually received by the sheriff, and not the face value of the county orders. SIEBECKER and MARSHALL, JJ., dissent.

APPEAL from a judgment of the circuit court for Douglas county: A. J. VINJE, Circuit Judge. *Modified and affirmed.*

Action by *Douglas County* to recover amounts paid to defendant, for compensation as sheriff on bills presented by him and paid by the county, for which it is alleged the county is not liable. Defendant denied all liability, and claimed that the amounts were properly allowed him, as sheriff of the county. The action was referred to Louis Hanitch, as referee, to hear, try, and determine. On the evidence produced before the referee, he found the following material facts: *William J. Sommer,* the defendant, was duly elected sheriff of *Douglas County* November, 1900, and qualified as such January 7, 1901, and continued in office until the expiration of the term, January 5, 1903. The county board passed a resolution at its meeting November 7, 1895, providing for compensation of the sheriff for all services to be performed within the county, changing the method of payment from that of the fee system to a fixed salary, and this compensation was to be in lieu of all fees and compensation for the sheriff, his deputies and undersheriff, rendered within the county, except compensation for the keeping and maintaining of prisoners in the county jail; this resolution to go into effect January, 1897. The county board met in annual session November 12, 1895, which was adjourned from time to time, by recesses and adjournments of from one to six weeks, until February 5, 1896. Special meetings were held between adjournments of the annual meeting. On December 19, 1895, at an adjourned meeting of the annual meet-

ing, the board met at ten o'clock, pursuant to order, and the chairman declared a recess until two o'clock p. m. the same day. Nothing appeared to show a majority of the board were present when recess was taken in the forenoon, but a majority was present in the afternoon, when its session was resumed, and an adjournment was ordered to February 5, 1896. At the session of February 5, 1896, a resolution was introduced fixing the salary of the incoming sheriff at the rate of $1,500 per annum, under the resolution compensating the sheriff by salary in lieu of the fee system. At an adjourned meeting of the board on March 16, 1896, this resolution was adopted by an affirmative vote of the board, with only one dissenting vote. At an adjourned session of the annual meeting, December 1, 1896, the board authorized the sheriff to appoint two deputies to act as bailiffs of said county, and allowed the sheriff $1,500 per annum as compensation for such bailiffs, together with actual expenses in serving warrants and transporting persons to the workhouse. The county paid the sheriff the compensation provided for in this resolution. At an adjourned annual meeting held April 14, 1898, a resolution was offered and adpoted providing that the sheriff and clerk of the circuit court who took office in January, 1899, should receive no salary, or allowance by way of salary; intending to restore the sheriff to the fee basis provided by statute. It appears that the appellant, as sheriff, filed bills with the county board during the first fourteen months of his term, which were audited and allowed, for services rendered and disbursements incurred by him for services other than maintaining prisoners in the county jail, amounting in the aggregate to the sum of $10,208.92, which was paid him. This amount consists of various items—street car and railroad fare in transporting prisoners to and from the county workhouse; guarding persons in the hospitals, lawfully in custody; for guarding persons taken into custody, and detained under orders from the county court, whose sanity was to be inquired into; for

guarding an ore dock against damages by employees during a strike, on request of the owners for protection of their property against violence; for amount paid to a bailiff appointed by the sheriff, and who attended and served in the circuit court when in session—which amounts so paid did not come into the hands of defendant. In addition to the above allowances, the board audited and allowed bills presented for services and expenses incurred in unsuccessful trips in serving subpœnas in criminal cases without the county, and for services and expenses in returning escaped persons to the reform school. Other items sought to be recovered consisted of overpayments on accounts through mistake; overpayments on claims allowed for bringing persons from without the state; for services and expenses in the unsuccessful pursuit of fugitives without the state; services and expenses in the unsuccessful pursuit of persons out of the county, but within the state, who, it is claimed, escaped from custody without fault or negligence of the sheriff, which bills were allowed without a certificate of the district attorney certifying that the ends of justice would be promoted in making such pursuit; for overpayments allowed for taking persons to the reform school in Milwaukee on commitments from courts in *Douglas County*, calculated on the mileage basis, instead of a *per diem* and necessary disbursements; for overpayments on like claims for taking persons to the penal institutions of the state on commitments from the courts of *Douglas County*, and like claims for taking persons to the state insane asylum on commitment from the county court of *Douglas County*. The trial court adopted the facts as found by the referee, but modified the conclusion of law in some particulars, and awarded judgment against appellant for $12,943.97, with interest, and costs and disbursements in the action. From this judgment this appeal is taken.

*H. W. Dietrich,* for the appellant.

*C. H. Crownhart,* for the respondent.

·SIEBECKER, J.   The first claim urged in appellant's be-
half is that the county board failed to fix a salary for the
.sheriff in lieu of all.fees and compensation for services ren-
.dered within the limits of the county by himself, his under-
:sheriff and deputies, except for keeping and maintaining
prisoners in the county jail.   This contention is based upon
the fact that the resolution of the county board prescribing
such salary was adopted at an adjourned session of the
·annual board meeting March 16, 1896.   The board met in
·annual session November 12, 1895, and adjourned from
time to time to this date.   The minutes of the proceedings
.show that the board had adjourned its session to December
19th, at ten o'clock in the forenoon.   On this day, at the
:appointed hour, in the absence of a quorum, the chairman
·declared a recess until the hour of two o'clock in the after-
noon of the same day, when the session was resumed, with
.a quorum present.   The action taken resulted in holding this
:session open until a later hour of the day.   The declaration
·of the chairman was not an adjournment or postponement of
the session.   His action had no other result than to announce
that no proceedings were to be taken for the period men-
tioned, on account of the absence of a quorum.   The same
result would have followed in the absence of a quorum with-
out any announcement of no quorum before the hour when
the session was resumed.   Either course simply held the ses-
·sion. open—suspended all proceedings until a quorum ar-
rived, when they could be resumed.

Can the annual meeting prescribed by law for county
boards be prolonged by adjournment from time to time?   The
statutes pertaining to the subject are silent on the question of
adjourning the meeting to a future time.   We must there-
fore look to the general power of such bodies for the answer
to this question.   The history of legislation germane to this
subject affords no satisfactory answer.   The legislative ex-
pression granting such power as to special sessions of the

board would seem to signify a recognition of the policy to permit adjournment, in that it extends this practice to special meetings, which right is seriously questioned without such express authority. As to general or annual meetings, it has been generally recognized that all *quasi*-judicial bodies possess the inherent power to adjourn the sessions of such meetings from time to time, within reasonable bounds, to a definite place and time. 1 Ency. Pl. & Pr. 248. It has been held:

"In the absence of statutory or constitutional provisions limiting or restraining the right of adjournment, every body of men, whether public or private, has the right to adjourn from day to day, or from time to time, or for any number of days, at any time, as it may think proper and expedient," and "whether the meeting is continued without interruption for many days, or by adjournment from day to day, or from time to time, many days intervening, it is evident it must be considered the same meeting, without loss or accumulation of power." *Comm. v. Brown,* 28 Kan. 83; *Donough v. Dewey,* 82 Mich. 309, 46 N. W. 782; Dillon, Mun. Corp. (4th ed.) § 269.

This power has been usually exercised by governing bodies like the county board. It is common knowledge that this right is deemed important for the necessary administration of county affairs, under the powers and duties imposed by law. Nor are any reasons suggested why the power is not an advantageous one to meet the requirements of a proper and successful administration of the county affairs in all respects. We are led to the conclusion that county boards have the power to adjourn their annual meetings, for any reasonable and sufficient grounds, both as to time and place of adjournment, attended with no diminution of power and such business as can be taken up at the initial session can properly be transacted at the adjourned session. It follows that the county board had thus fixed the salary of the sheriff of the county as found by the referee and court.

It was found that appellant was paid by the county for services rendered wholly within the county on a fee basis, and that he acted in good faith in filing the bills for payment, and that the district attorney and county board approved and allowed them in good faith, under the misapprehension that he was, in law, to be compensated by a fixed salary. Appellant contends that the money so paid under mistake of the law by all interested parties cannot be recovered in this suit, because it is in the nature of an action for money had and received. It is admitted that this court determined the question now suggested on a like state of facts before the court in the case of *Northern T. Co. v. Snyder,* 113 Wis. 516, 89 N. W. 460, but we are invited to reconsider that decision. The principles applied in the *Snyder Case* had been announced and adhered to for many years prior thereto. In the case of *St. Croix Co. v. Webster,* 111 Wis. 270, 87 N. W. 302, this court reiterated the result of the decision upon this question presented, and adhered to the rule:

"A public officer takes his office *cum onere,* and all services performed by him within the scope of his official duties, or which are voluntarily performed as such officer, are covered by his salary or compensation as fixed by law. If such officer receives [such] additional compensation from the municipal corporation whose officer he is, even with its consent, he obtains no title thereto, but it may be recovered by the corporation in a proper action at law."

This doctrine has been so often applied and accepted as the settled law of cases in this state as to preclude a re-examination of the subject. Nor do we find any grounds for a distinction which would except this case from what was held in the above cases. In *Northern T. Co. v. Snyder* the court distinctly asserts that the rule of *Frederick v. Douglas Co.* 96 Wis. 411, 71 N. W. 798, did not rule the situation presented here. Under the facts found by the court, appellant, the members of the county board, and district attorney,

all acted in good faith, and believed their action was legal. The court there asserted that "so far as his bills are for the performance of duties which his office required him to perform, and for which he was entitled to pay, either by salary or otherwise, from the county, he did no more and no less than he would have done," had he been allowed payment under the fee system. As to any service not required of him officially, the county received no benefit, nor did it incur any liability. This left him in the same position, whatever system of payment was followed, and leaves no facts whereon to predicate an estoppel. All parties acted without authority, and wrongfully appropriated the public money, which must be returned to the rightful owner.

Proceeding now to the items which are challenged as wrongfully charged to appellant in the judgment, we find: The appellant included in his bills against the county, which were allowed and paid, items of street car and railway fare of prisoners, in transporting them to and from the county jail, workhouse, and the courts. If the items were proper charges to be allowed a sheriff under the fee system, then appellant is not entitled to them, because his salary is in lieu of all fees and compensation for services within the county, except for keeping and maintaining prisoners in the county jail. The items cannot be said to come within the exception. If these charges are not within the salary, then they, of necessity, were not lawful, and he must restore the money received therefor.

The judgment includes the amount of $255 paid to J. W. Harrington as deputy sheriff under appellant's appointment, who presented this claim for such services to the county board in his name, which was audited, allowed, and county orders issued in his name, and paid to him personally. The amount was included in the recovery upon the theory that such deputy was under the official authority of, and acting for, the sheriff, and therefore received this compensation

from him. This claim does not harmonize with the finding that the deputy presented his bill for such services as an individual claim against the county, and that it was so allowed and paid him personally. These circumstances of the transaction exclude the idea that appellant was a participant in the unlawful acts by which this money was obtained from the county. If he sustained a relationship of personal liability to the deputy, it is in no way affected by these illegal acts; nor has he in any way been pecuniarily benefited through this payment by the county. As above stated, this action is to recover moneys paid appellant without authority of law. It cannot include payments to other persons on the illegal bills against the county, when he was not entitled thereto, nor enriched thereby. We must hold this item should not be included in the recovery.

Appellant also charged and was allowed for services and disbursements in apprehending and returning fugitives from justice from without the state, without obtaining the certificate of the district attorney required by sec. 2, ch. 126, Laws of 1901, before the services were rendered, and bills for services in the unsuccessful pursuit of fugitives from justice within the state, outside the county, without having the certificates of the district attorney required by subd. 34, sec. 731, Stats. 1898, and without making proof before the county board when these claims were considered that the escape from custody or pursuit was not the result of his carelessness or negligence. The court found these claims were unauthorized, and the amount must be repaid. Similar items were presented in the *Snyder Case*. It was therein determined that it was necessary to comply with the statutory requirements, to entitle a sheriff to such fees, and to allow and pay them contrary to such expressed provisions was an abuse of power by the county board. To allow payment of such bills upon the ground that the district attorney now stands ready to make such certificates as appellant offered to show

Douglas Co. v. Sómmer, 120 Wis. 424.

upon this trial, and that the escapes were not the result of his carelessness or negligence, would, in effect, nullify the statute, and permit county boards to audit and pay such claims regardless of these positive restrictions, and result in an actual evasion of the legislative will. The law clearly imposes the duty of boards to become satisfied upon evidence brought before them that claims of this nature are just, before allowing them as claims against the county, and a failure of duty in this regard makes their action void. *Northern Trust Co. v. Snyder,* 113 Wis. 516, 89 N. W. 460.

It is found that all the claims allowed and paid, and upon which a recovery is sought to be enforced, were paid in county orders, worth ninety per, cent. of their face, and that appellant realized only this amount thereon. My brethren are of opinion that this action is based upon implied *assumpsit,* and is in its nature one for money had and received, and that respondent can recover no more than the actual amount of its money which got into the pockets of appellant, within the rule of *Limited I. Asso. v. Glendale I. Asso.* 99 Wis. 54, 74 N. W. 633, where it is said:

"The basis of recovery in the latter case [this class of cases] being a loss on one side, and a consequent enrichment on the other, liability can only exist in so far as these elements concur. . . . The promise that the law implies is that the guilty party will restore that which he has received, and which the other has shown himself entitled to. To the extent, therefore, which it is shown that the one party has suffered loss, and the other gained profit, can the recovery in this form be maintained." *Johnston v. Charles Abresch Co.* 109 Wis. 182, 85 N. W. 348, and cases cited.

The facts being established that the county orders, when issued and delivered, had a market value of ninety per cent. of their face value, and that being all appellant could actually realize thereon, it represents the loss of the county which went to the enrichment of appellant, and must therefore be the measure of the recovery. It follows from this conclusion

that ten per cent. ($1,268.90) of the face value of the orders received by appellant in payment of the items upon which recovery is had in this case should be deducted from the amount of the judgment as awarded by the court, after deducting the sum of $255 paid the deputy sheriff, J. W. Harrington, as heretofore indicated.

I am unable to persuade myself that the respondent should be restricted in its recovery to the amount appellant actually realized in money when he sold the county orders. It must be assumed that the county would pay, in money, out of the county treasury, the amount called for upon the face of these orders. The facts absolutely establish what amount of money the county must pay, for his benefit and use, upon the claims presented by him, for which the county received no consideration. In my opinion, it can make no difference whether he personally collected the amount called for, and thereby converted the money to his own use, or sold the orders to another, who actually received the money paid on these orders, which he had wrongfully obtained and converted before the county parted with the money, through the medium of an innocent purchaser for value. I do not perceive why his illegal acts of converting the orders should not be deemed an appropriation of the money actually paid thereon, for his use and benefit, and consequently make him liable to restore it.

I am authorized by Mr. Justice MARSHALL to state that he concurs in the view I have expressed upon the foregoing question in the case.

*By the Court.*—The judgment is modified by reducing the damages to $12,200.44, and the total to $12,314.69, and, as so modified, the judgment is affirmed; the appellant to recover costs in this court.