TOWN OF WASHBURN, Respondent, vs. LEE and others, Appellants.

*April 17—May 8, 1906.*

(1) *Stipulation limiting plaintiff's claim: Relief from: Opportunity for further defense.* (2, 3) *Illegal payments by public officer: Action on his bond: Right of sureties to have other remedies exhausted, or to subrogation: Practice: Parties.*

1. In an action by a town on the bond of its treasurer, based on his failure to account for certain moneys, it was stipulated that unless a certain payment was illegal the treasurer had accounted

for all moneys received. Defendants, in proving that such payment was not illegal, proved that the amount paid had been immediately repaid to the treasurer so that he again became chargeable therewith; and it appeared that he had not further accounted therefor. *Held,* that while it might have been proper to allow plaintiff to be relieved from the stipulation and to base its claim on the later failure to account, yet it was error to grant a recovery on such new claim without giving to defendants an opportunity to meet it by any defense they might have thereto.

2. If money is paid by a town treasurer, or by a bank having custody of the town moneys, for a known illegal purpose, the town may recover it from the payee or from the bank, their liability to the town, in such a case, being direct and primary; and the sureties on the treasurer's bond, upon being sued to make good the amount of such illegal payment, are entitled either to have a recovery against them postponed until exhaustion of the town's remedy against the persons primarily liable, or to have such persons made parties, to the end that there may be a complete and effective adjudication as to such primary liability and the extent of the rights of the town to which the sureties may be subrogated.

3. Under our Code (secs. 2657, 2656a, and 2610, Stats. 1898) such relief can be obtained fully by the sureties in the action against them on the bond.

APPEAL from a judgment of the circuit court for Douglas county: A. J. VINJE, Circuit Judge. *Reversed.*

Action to recover upon the official bond of defendant *Lee* as treasurer of the town of *Washburn* for the year April, 1902, to April, 1903, the other defendants being sureties upon that bond. The amended complaint set forth as a cause of action the receipt by *Lee,* officially, of $159,465.94 and disbursement on behalf of the town of $142,835.70, and no more, and that he wrongfully and unlawfully converted to his own use on and between the 1st day of June, 1902, and the 1st day of October, 1902, the sum of $16,630.24, and still wrongfully retains the same and has refused to pay it upon a proper demand by his successor in office. The answer was general denial.

Upon the action being tried to the court without a jury, all claims were abandoned except with reference to two payments of $5,035 each, made at the same time, namely, about July 15, 1902, upon two town orders, payable, respectively, to the Northern State Bank and the Bayfield County Bank. The plaintiff apparently contended that these orders were given for an unlawful purpose, and that payment of them by the treasurer was unlawful and, therefore, made him and his bondsmen liable. The plaintiff conceded receipt of some $2,000 from the Northern Pacific Railway Company, which, upon the theory that these alleged unlawful orders were for the benefit of the Northern Pacific Railway Company, should be deducted from the treasurer's liability. There was also offered in evidence, however, the treasurer's report, his statement of account and settlement with the town, whereby it appeared that he had received due credit for the payment of these orders. Evidence was also offered that the orders were given to the two banks to procure loans for a short time pending the collection of license moneys, and that the banks paid and credited to the treasurer in his bank account the amount thereof, but that he did not in his settlement with the town charge himself with the receipt of that money.

The court made its findings apparently ignoring the claim that the payment of the money on these orders by the treasurer was illegal, and therefore a conversion, but found that on the 15th day of July, 1902, he, as treasurer, collected and received the amount thereof, $10,000, and has at all times refused and neglected to account therefor and pay it over to his successor, except that he has since paid the sum of $2,000. Accordingly, the court entered judgment for the sum of $8,000, with interest and costs, from which the defendants appeal.

For the appellants there was a brief by *A. W. McLeod* and *Louis Hanitch,* attorneys, and *L. K. Luse,* of counsel, and oral argument by *Mr. Luse.*

*George G. MacDonald* and *W. M. Tomkins,* for the re-
spondent.

DODGE, J.   While by the complaint is presented a cause
of action to recover a general balance of $16,630.24 by rea-
son of *Lee's* failure to account for all the moneys received
by him as treasurer, the claim became defined by certain
affidavits before trial as a suit to recover the amount of cer-
tain specific illegal payments for which the treasurer had
received credit.   These were restricted to payment of two
town orders of $5,035 each, payable one to each of two banks,
claimed to have been unlawfully issued for loans from such
banks for money to be paid either by the bank or the town
officers to the Northern Pacific Railway Company as induce-
ment to establish railroad.   Upon the trial, plaintiff hav-
ing offered evidence of the issue of such orders for a loan
"for general purposes," and also put in evidence the treas-
urer's report and settlement for the year in question, which
showed that he had taken credit for payment of these two or-
ders, an admission or stipulation was made that the only mis-
appropriation claimed for "is the payment of these two or-
ders by the defendant *Nels Lee* as town treasurer, and, un-
less such payment was illegal, he has accounted for all mon-
eys received."   Thereupon it was made to appear, substan-
tially without dispute, that the payment of these orders was
merely ostensible; that, although *Lee* gave to the bank checks
for the amount of the orders, the bank on the same day gave
him a credit to the same amount, in his regular bank ac-
count, as treasurer, thus entirely offsetting the charge for
the checks drawn.   Thus it was established that by the osten-
sible payment of these orders, which plaintiff proved, not
a dollar passed out of the treasury of the town.   It was
also made to appear, beyond the merest suspicion, that *Lee*
paid the orders in perfect good faith and without any knowl-
edge of impropriety or illegality in their issue; they being

regular on their face. Thus it was established that the payment of these orders caused no loss to the town and had in it nothing of illegality more than curiously cumbersome bookkeeping. But defendants, in thus proving that the payment was not illegal, had proved that it was no payment, or, more exactly, that the money had by the bank immediately been repaid to the treasurer; so that, if he took credit for paying the orders as he had done in his report and settlement, he should charge himself with a like amount as received at the same time. No such charge appearing in his report and settlement, the court proceeded to make findings wholly ignoring the question of the legality of the orders or their payment, but declaring that the treasurer had received from the banks the proceeds of these orders and had neglected and refused to account for it or pay it over to his successor, but, at some time between its receipt, July 15, 1902, and April 8, 1903, he had converted it to his own use.

This narrative, extracted from much confusion of evidence and record, makes plain that the recovery is not at all within the limits of the stipulation, on which, till withdrawn, defendants were entitled to rely. While, doubtless, upon the showing made after the stipulation, it would have been proper to allow the town to be relieved from it and assert right of recovery for failure to account for the proceeds of the loan when it appeared that *Lee* had received them, yet the defendants should have the concurrent right to meet such new claim by showing, if they could, that *Lee* had made other payments, or had other offsets against such receipt, even though not in his report. Until notified of change in plaintiff's position, they had no occasion to do this. There are several intimations in the record, not perhaps rising to the dignity of evidence, suggesting at least a possibility of some such further payment either by the treasurer or with his knowledge and perhaps consent. Thus, in a petition filed by the defendants, it is asserted that $10,000 was paid by the banks to one Yates by or-

der of the town board.    If any such payment was made out of the moneys in bank in the name of *Lee* as treasurer, it might constitute a credit to him, if legal and proper.    That some such payment may have been made is suggested by the appearance in the bank account of two debits immediately together, each something more than $10,000. . One of these doubtless included the checks for the two orders, which were offset by the credit of same date of the amount of those orders; but of the other we have no explanation, and it may cover a $10,000 payment to Yates, as suggested.    We are convinced that no judgment can safely stand upon this record; not that which was entered below, because, by reason of plaintiff's stipulation, defendants have been diverted from establishing a defense which they may have to the failure to account for the money credited to *Lee* in his bank account; not a judgment in favor of defendants, because the present liability is entirely within the cause of action stated in the complaint, but did not fully develop itself until after the stipulation was made.    We deem it the only safe course to remand for further trial of these questions.

There is another assignment of error, not material to a judgment on the present grounds of recovery, which, however, might become material if the plaintiff should sustain its claim of an illegal payment with which the defendant *Lee* was connected.    That assignment arises in this way:    Upon a motion for a reference the plaintiff filed an affidavit declaring that its claim was for the conversion by *Lee,* to himself or some other person, of the two $5,035 sums.    Thereupon the defendants presented a petition alleging that they thereby, for the first time, learned that plaintiff so claimed, and that the only transaction with reference to said sums consisted in the payment of regular orders, innocently, by *Lee,* but that the two banks to which the orders were drawn each paid, by order of the town board, the sum of $5,000 to one Yates, a resident of *Washburn,* and that the actions of the town board

and of. said banks in making the loans, and of Yates in taking the money, were illegal, as they and each of them knew; that the respective banks and Yates were accessible, solvent, and able to respond for the amounts specified; that *Lee* was wholly insolvent; and that, if the defendant sureties were obliged to pay, they would be without adequate remedy at law. They prayed that the plaintiff be restrained and enjoined from prosecuting the present action until it should have exhausted its remedy to recover back its moneys from the two banks and *Lee;* or, in the alternative, that such third persons be brought in as parties and their liabilities adjudicated, and sureties' rights to subrogation of the claim against them be adjudged— accompanying such petition with a bond conditioned for the payment of any expenses or costs the town might incur in proceeding against such third persons and offering further or other bond as the court might direct. The application of this petition was denied, over exception by the defendants.

There is no doubt, under our decisions, that the recipient of public moneys illegally paid is liable therefor; certainly if he received them with knowledge of the facts rendering the payment illegal. Every public officer dealing with public moneys is an agent with strictly limited powers, and those limits are presumptively known of all men, so none can assert belief in any broader agency. An illegal payment has no effect on the title of the money, so it remains the property of the principal, the public, and can be recovered back. *Frederick v. Douglas Co.* 96 Wis. 411, 71 N. W. 798; *Webster v. Douglas Co.* 102 Wis. 181, 194, 77 N. W. 885, 78 N. W. 451; *Etsell v. Knight,* 117 Wis. 540, 94 N. W. 290; *Douglas Co. v. Sommer,* 120 Wis. 424, 98 N. W. 249; *Wis. Cent. R. Co. v. U. S.* 164 U. S. 190, 17 Sup. Ct. 45. If, therefore, money was paid either by the town treasurer or by the banks, for a known illegal purpose, to Yates, whether by order of the town board or otherwise, the right of the town to recover it back from him is clear; also from the paying banks, if they, as

custodians of public moneys, acted with knowledge of absence of legal authority.    Such liability to the town is direct and primary.    They can plead no equity in favor of their retention of such illegal receipts.    The defendant sureties, on the other hand, are favored in equity.    They are called on to pay what is not their own indebtedness.    While the town has full legal right to look to them to make good the delinquencies of their principal, still equity will require that they be not called on, if the town can obtain reimbursement from persons or property primarily liable to it, without substantial inconvenience or expense.    Further, if the sureties are required to pay, equity will ordinarily see to it that they be subrogated to any rights the creditor may have against persons or property primarily liable.    4 Pomeroy, Eq. Jur. (3d ed.) § 1419; 1 Brandt, Sur. & Guar. (3d ed.) 324, 350, 353; *Sweet v. Jeffries*, 48 Mo. 279; *Bittick v. Wilkins*, 7 Heisk. 307; *German.Am. Sav. Bank v. Fritz*, 68 Wis. 390, 32 N. W. 123.

In the light of these elementary principles it is plain that, if the recipients of any illegal payment are liable and solvent, they ought to repay such sums rather than the sureties be required to indemnify the town for the loss; or, if the latter do pay, they ought to be subrogated to the right of the town to reclaim its funds from the unlawful holders.    The petition of the defendant sureties declares that the recipients of the moneys are solvent and accessible and offers to pay any expense which the town may incur in efforts to collect from them. Obviously, if plaintiff recovers from defendants in this action on the ground of specific illegal payments, the court must consider the facts and the law establishing such illegality.    But, if such recipients are not parties to the action, such consideration and adjudication will not bind-them, and, if the defendant sureties are subrogated by law to rights against them, the same questions must be tried at least once again, perhaps thrice, with all the possibilities of a different decision; that is to say, all rights arising out of such illegal payments cannot

be finally determined without the presence of the persons whom the petitioners ask to have brought in as parties. Before the joining of law and equity jurisdiction in the same court this situation would have presented a very persuasive case for a court of equity to have enjoined further prosecution of this action until plaintiff had exhausted its remedy against the recipients and holders of its money (4 Pomeroy, Eq. Jur. [3d ed.] § 1362), and in at least one well-considered case that was done (*Bunting v. Ricks,* 2 Dev. & B. Eq. 130). See, also, *Sweet v. Jeffries,* 48 Mo. 279.

Under our Code, however, the same relief is available with much less of delay and inconvenience to either court or plaintiff. 4 Pomeroy, Eq. Jur. (3d ed.) § 1368 *et seq.* By sec. 2657, Stats. 1898, it is provided that defendant "may set forth as many defenses and counterclaims as he may have, whether they be such as were formerly denominated legal or equitable." This includes such facts as formerly would support an injunction against further prosecution. *Chicago & N. W. R. Co. v. McKeigue,* 126 Wis. 574, 105 N. W. 1030. By sec. 2656a, Stats. 1898, it is provided that a "defendant may have affirmative relief against a codefendant, or a codefendant and the plaintiff, or part of the plaintiffs, or a codefendant and a person not a party, or against such person alone, upon his being brought in. . . . The court or judge may make such orders for the service of the pleadings, the bringing in of new parties, . . . as shall be just." Also, sec. 2610, Stats. 1898, requires:

"When a complete determination of a controversy cannot be had without the presence of other parties, or any persons not parties to the action have such interests in the subject matter of the controversy as require them to be made parties for their due protection, the court shall order them brought in."

The petition clearly shows a right in the defendant sureties to relief obtainable only by equitable procedure, either to

have recovery against them postponed until exhaustion of the town's remedy against others primarily liable, or to be subrogated to plaintiff's rights against those others; and that, to a complete and effective adjudication as to such liability and the extent of the rights to which the defendants shall be subrogated, it is essential that such others be parties to the present action. The statutes mentioned contemplate and require that in such a situation the necessary third persons be brought in as parties, whereupon plaintiff can be required to make specific complaint to set forth the illegality which it claims affected the payments, and the defendant sureties can, by answer or cross-complaint, assert their claims to an adjudication of the liability of such new parties and judgment against them in favor of the town or in favor of these defendants, if they shall pay the money which the town has lost. We are convinced that such an order should be made.

*By the Court.*—Judgment reversed, and cause remanded for further proceedings according to law and the foregoing opinion.