CITY OF MILWAUKEE, Respondent, vs. BINNER and another, Appellants.

*October 9—October 27, 1914.*

*Officers: Illegal disbursement of public funds: Liability: Municipal corporations: City clerk: Appropriation for making tax roll: Payment for other work.*

1. It is the policy of the law to hold an official custodian of public funds to very strict accountability, and to make him responsible for money illegally disbursed, regardless of whether the municipality received an equivalent or not.
2. The delivery of money to a city clerk for a particular purpose necessarily makes him a trustee thereof for such purpose.
3. Pursuant to ch. 376, Laws of 1897, money was appropriated by the common council to the city clerk for the employment of expert assistants in making the tax roll. By direction of the clerk, one B., so employed as an expert, did general clerical work, thereby relieving the deputy clerk from his regular duties and enabling him to do the expert work on the tax roll for which B. was paid out of said special fund. *Held*, that although the deputy clerk received no extra compensation for the work done by him, so that in an indirect way the city received full value in work on the tax roll for the money paid, such money, so far as paid to B. for work not done on the tax roll, was unlawfully disbursed by the clerk, and the city might recover it back from the clerk and from B.

APPEAL from an order of the circuit court for Milwaukee county: W. J. TURNER, Circuit Judge. *Affirmed.*

Action to recover money claimed to belong to the plaintiff and to have been unlawfully diverted from its proper purpose and converted by defendants to their own use.

The following are the material facts stated in the complaint: During the year 1911 defendant *Thompson* was the city clerk of the city of *Milwaukee,* Wisconsin, and charged with the duty of making the city tax roll for such year. Pursuant to ch. 376, Laws of 1897, $4,800 was appropriated by the plaintiff's common council for expenditure by the clerk, so far as necessary in payment of expert assistants

in making such roll, he to draw such amount upon a city order and file with the proper city officer a sworn pay-roll showing the manner of disbursing the money. He, in due course, obtained possession of the fund and employed defendant *Binner* as an expert assistant. Thereafter he made and filed sworn pay-rolls, purporting to show that *Binner* had worked on the tax roll from August 1, 1911, to November 30, 1911, at $100 per month. Pursuant thereto, *Binner* drew $325.83. He only performed twenty-one and one-half days' work on the tax roll. The balance of his time was spent doing general clerical work in the clerk's office which the clerk had no authority to procure done at the expense of the plaintiff. *Binner* knew he was employed to do expert work on the tax roll and that he drew pay for other work out of the special fund. Upon such facts coming to plaintiff's knowledge its common council directed its city attorney to enforce restitution of the money so unlawfully expended. Thereafter a demand was made upon defendants for such restitution and it was refused.

Defendants answered, pleading this in justification: During the time for which *Binner* drew the $325.83 he served as alleged in the complaint, thereby relieving the deputy clerk, H. C. Schultz, from his regular duties, enabling his principal to assign him to work on the tax roll. Schultz did the tax-roll work for which *Binner* drew pay, except twenty-one and one-half days, and he did not receive any pay in addition to his regular compensation as deputy city clerk. The city, through its common council and other officers, knew of the transaction while it was going on. *Binner* did not know out of what fund he received his pay. He only knew that he signed pay-rolls specifying his name, address, time spent, and the amount due him.

The city charter (ch. V, sec. 4) provides that:

"All the officers and employees of the city of *Milwaukee* unless now otherwise provided by law, the charter of the city of *Milwaukee,* or by ordinances, or unless otherwise provided

in these General Ordinances, shall be appointed by the head or heads of the respective departments to which they belong, and perform such duties outside of those prescribed by law and the ordinances of the city, as the rules of the department may provide and the head or heads thereof may direct."

The services rendered by Schultz on the tax roll were necessary and the services rendered by *Binner* were reasonably worth to plaintiff the amount he received.

Plaintiff demurred to the answer for insufficiency, and it was sustained.

For the appellants there was a brief signed by *Rubin & Zabel,* attorneys, and *W. C. Zabel,* of counsel, and oral argument by *H. B. Walmsley.*

For the respondent there was a brief by *Daniel W. Hoan,* city attorney, and *E. L. McIntyre,* assistant city attorney, and oral argument by *Mr. McIntyre.*

MARSHALL, J.   We perceive no basis in the record for the claim that appellant *Thompson* did not unlawfully appropriate the money paid to *Binner.*   True, there was no moral turpitude about it; but if violations of law without such characterization, in respect to the administration of public funds, could be efficiently pleaded in justification, the door would be wide open for serious abuses.   It is the policy of the law to hold an official custodian of public funds to very strict accountability, and to make him responsible for money illegally disbursed, regardless of whether the municipality received an equivalent or not.   There is no other safe course, and any attempt to evade the law must receive judicial condemnation upon every opportunity therefor.

The money was delivered to the city clerk for a particular purpose.   That, necessarily, made him a trustee thereof for such purpose.   The trust was susceptible of being executed only by paying so much of the money as was needed to procure expert assistants to work on the tax roll, and returning the balance to the city treasurer.   The law contemplated payment for services of a particular kind and to the person

or persons rendering the service, and on sworn pay-rolls showing such facts.

Notwithstanding there evidently was no intent to injure respondent and, probably, in an indirect way it obtained full value in work on the tax roll for money paid, the fact remains that the pay-rolls were false; that while *Binner* drew the money on the pretense that it was for tax-roll work, he did no such work, except for a small part of the time for which he was paid. He had no right to draw the money because he did not do the work. The fact that it was done by another who was in the city's employ and without pecuniary prejudice to it, does not change the situation.

From the circumstances of the wrong to respondent, a promise is conclusively implied to return the money disbursed to and received by *Binner,* which is just as binding as any other contract to pay money. This case is ruled in favor of respondent by *Frederick v. Douglas Co.* 96 Wis. 411, 71 N. W. 798; *Washburn v. Lee,* 128 Wis. 312, 319, 107 N. W. 649, and many other cases.

Counsel for appellants seem to have been misled, by reading the opinion written by Chief Justice Cassoday in *Frederick v. Douglas Co.,* into supposing that, in case of actual rendition in good faith of needed services to a municipality and payment therefor out of the public treasury, the money, though illegally taken from such treasury, acquires a. new status in the operation; that the title thereto vests in the recipient, or that an equitable bar is created by operation of law, preventing the municipality from recovering the money back. There is something of that sort in the opinion, but it was not the basis of the decision and is contrary to the majority view, as plainly expressed in an opinion by the present Chief Justice in these words:

"To hold that, when public officers have paid out money in pursuance of an illegal and unwarranted contract, such moneys cannot be recovered in a proper action brought upon behalf of the public, merely because the payment has been voluntarily made for services actually rendered, would be to

introduce a vicious principle into municipal law, and a principle which would necessarily sweep away many of the safeguards now surrounding the administration of public affairs. Were this, in fact, the law, it can readily be seen that public officials could at all times, with a little ingenuity, subvert and nullify that wholesome principle which prohibits their spending the public funds for illegal purposes. All that would be necessary to be done would be to make the contract, have the labor performed, pay out the money, and the public would be remediless."

In *Washburn v. Lee, supra,* the principle so unqualifiedly stated was thus approved:

"There is no doubt, under our decisions, that the recipient of public moneys illegally paid is liable therefor. . . . Every public officer dealing with public moneys is an agent with strictly limited powers, and those limits are presumptively known of all men, so none can assert belief in any broader agency. An illegal payment has no effect on the title of the money, so it remains the property of the principal, the public, and can be recovered back."

And further, in effect, if money is paid by a municipal treasurer, either of his own motion or by order of his principal, for a known illegal purpose the right of such principal to recover it back is clear.

No more need be said. This case presents a very plain situation for application of the doctrine declared as stated. It is a much stronger case for such application than the *Frederick Case.* The money was not, as there, paid out on the order of the municipality. The action was not, as there, instituted by a taxpayer who had so slept upon his rights that equity might properly refuse, at his suit, to enforce the right of the municipality. Here the money came lawfully into the hands of the city clerk and was illegally disbursed by him to *Binner,* and the city very promptly disavowed the act upon having full knowledge thereof, and took steps to recover the money back.

*By the Court.*—Order affirmed.