United States Fidelity & Guaranty Company,
Appellant, vs. Hooper, Respondent.

*October 8—November 5, 1935.*

*William G. Wheeler* of Janesville, for the appellant.

For the respondent there was a brief by *McGowan, Geffs, Fox & Persons* of Janesville, and oral argument by *H. S. Fox.*

MARTIN, J.   Most of the facts essential to a proper determination of this case have been stipulated.   From the facts so stipulated, it appears that respondent, while superintendent of the state school for the blind at Janesville, Wisconsin, was required to enter into a bond with the state of Wisconsin for the faithful discharge of his duties in his said office according to law, and to pay to the parties entitled to receive same, such damages, not exceeding in the aggregate $25,000, as may be suffered by them in consequence of his failure to so discharge such duties.   Among the duties devolving upon respondent was that of certifying to the state board of control the names of persons entitled to be upon the pay roll of the state school for the blind.

Prior to July 1, 1931, one Susan B. Murphy was a teacher at said school.   In September of 1931 she became ill and was unable to discharge her duties as such teacher, and was thereupon given an indefinite leave of absence by the respondent.   She did not at any time thereafter resume her duties as such teacher.   However, it appears that from September, 1931, until June, 1933, the respondent certified the name of Miss Murphy as a teacher at said school as entitled to her salary.   By means of such certification, her salary

check was issued by the state and each month sent to the respondent for delivery to her. The total of such checks was $2,474. It appears that with the consent of Miss Murphy her pay checks were indorsed and cashed by respondent or under his direction, and he received the money, excepting the sum of $148.50, being the amount withheld by the teachers' annuity and retirement board for the teachers' retirement fund.

It appears that on or about October 1, 1931, respondent secured the services of a Miss Michels, a former teacher in the primary department of the public schools of Milwaukee, who had recently become blind. She had attended the summer school for the blind at Janesville during the summer of 1931. When Miss Murphy was about to leave in September, she and respondent had a talk with Miss Michels during which Miss Michels expressed a desire to stay at the school. Respondent put Miss Michels in Miss Murphy's place as teacher without notice to the state board of control or the bureau of personnel. Miss Michels received no salary and her name was not certified on the pay roll. Shortly thereafter respondent procured the services of an assistant to Miss Michels, designated as "reader." This was done without notice to the state board of control or the bureau of personnel and said assistant's name was not certified on the pay roll. During the school year from September, 1931, to June, 1932, respondent paid said assistant "reader" the sum of $290.65 out of the proceeds of Miss Murphy's checks. During this school year both Miss Michels and her assistant were kept and maintained at the school. In the fall of 1932, respondent engaged a new assistant to Miss Michels, who served as a "reader," and who also taught certain classes. Such engagement was without notice to the state board of control or the bureau of personnel and said assistant's name was not certified on the pay roll. However, during the school year from September, 1932, to June,

1933, respondent paid said assistant the sum of $870 from the proceeds of Miss Murphy's checks, and during the second school year both Miss Michels and her assistant were kept and maintained at the school.

It is stipulated in the record that the regular charge for maintenance was $25 per month for each person. The state's claim for the cost of maintenance of Miss Michels and her assistant during the two school years is in the sum of $725. In addition to the disbursements made by respondent to which reference has been made, he claims to have made certain miscellaneous disbursements amounting to $109.65. Respondent testified that he left his position as superintendent in June, 1933; that he did not notify the board of control that he was holding the money received as Miss Murphy's salary until shortly before he left; that the state board of control made demand on him for $2,300, less the amount he had on hand. When his services as superintendent of the institution terminated in June of 1933, respondent had in his possession the sum of $1,055.20 of the moneys which he had received from the proceeds of Miss Murphy's checks. He deposited this amount of money on June 14, 1933, in the Merchants & Savings Bank in his own name as trustee. Later, on advice of his counsel, he paid this amount back to the state.

The state of Wisconsin made claim against appellant in the sum of $1,995.30. The claim consists of salary certified by respondent for Miss Murphy at the rate of $140 per month from October 1, 1931, to and including May, 1933, in the sum of $2,474 and for institutional maintenance cost of Miss Michels and her assistants in the sum of $725, making the total claim $3,199. The state credited respondent with the item of $148.50, being the amount retained from Miss Murphy's salary by the teachers' annuity and retirement board, also the sum of $1,055.20 which respondent had paid back to the state. After this claim was made and

legal proceedings threatened, the appellant surety company succeeded in negotiating a settlement with the state for the sum of $725, securing a full release of all parties and the surrender of the bond. Prior to the commencement of this action, appellant made demand on respondent for said sum of $725, which amount he refused to pay.

The respondent's principal contention is that the state sustained no damage by reason of his acts; that he acted in good faith in disbursing the moneys he received from the proceeds of Miss Murphy's checks; also that the state board of control, or some members of the board, had knowledge of his actions. On the stipulated facts and the respondent's own testimony, we hold that he breached his bond as a matter of law. Month after month from September, 1931, to and including June, 1933, he certified and returned to the state board of control the pay rolls for the institution of which he was superintendent containing the name of Susan B. Murphy as a teacher. He knew the certification was false. He knew he had no legal right to receive the proceeds of these checks thus fraudulently obtained from the state treasurer. The stipulated facts here not only show a breach of the respondent's bond with resulting civil liability, but also a violation of a criminal statute. Sec. 348.33, Stats., provides:

"*False Certificates.* Any public officer whatever, in this state, whose duty it shall be by law to make any official certificate in respect to any matter or thing, who shall state in such certificate, in respect to anything material, that which he knows to be false or that which he has not good reason to believe is true, shall be punished by imprisonment in the county jail not more than six months or by fine not exceeding one hundred dollars."

This court in *Milwaukee v. Binner,* 158 Wis. 529, 533, 149 N. W. 211, said:

"There is no doubt, under our decisions, that the recipient of public moneys illegally paid is liable therefor. . . . Every

public officer dealing with public moneys is an agent with strictly limited powers, and those limits are presumably known of all men, so none can assert belief in any broader agency. An illegal payment has no effect on the title of the money, so it remains the property of the principal, the public, and can be recovered back."

To the same effect, see *Washburn v. Lee,* 128 Wis. 312, 318, 107 N. W. 649; *St. Croix County v. Webster,* 111 Wis. 270, 87 N. W. 302; *Douglas County v. Sommer,* 120 Wis. 424, 98 N. W. 249. In *Chippewa Bridge Co. v. Durand,* 122 Wis. 85, 105, 99 N. W. 603, dealing with a situation where a public official used money contrary to law, but otherwise to accomplish a legitimate municipal purpose, this court said:

"It will not do to allow such officers to escape responsibility in such cases because, though they broke the law, they acted in good faith. The law does not permit that, yet such species of good faith is one of the most common defenses insisted upon in cases of this kind."

As to leave of absence, sec. 16.275, Stats., provides as follows:

"(1) Appointing officers may in their discretion grant to each subordinate employed subject to the provisions of this chapter, a noncumulative leave of absence without loss of pay, at the rate of three weeks for a full year's service.

"(2) Leave of absence with pay owing to sickness, and leave of absence without pay, other than vacation, shall be regulated by rules of the bureau."

Sub. (2) of Rule 12 of the rules of the bureau of personnel provides:

"Leaves of absence with pay, other than vacation, on account of temporary physical disability or injury or other causes for absence at a rate in excess of twelve work days in any calendar year may be granted to employees only upon recommendation to the bureau of personnel in writing by appointing officers, investigation by the director of personnel,

and report to and approval by the personnel board at a regular meeting; record thereof shall be made in the minutes."

It is not claimed by respondent that he notified either the bureau of personnel or the board of control of Miss Murphy's absence from the school. Indeed, it would be difficult to find a clearer case of a violation of a law than this certification of the pay roll, over a period of more than a year and a half. Respondent, through such false certification, became illegally possessed of the moneys and property of the state to the extent of $2,325.50. It, of course, is no defense to say that he did not use it for his personal ends. The receipt and disbursement of all the money, regardless of the purpose for which it was used, was unauthorized and, therefore, a violation of his official bond.

Secs. 16.01 to 16.30, Stats., relate to appointments to positions under civil service. Miss Michels and her assistants were appointed by respondent without the knowledge or approval of the bureau of personnel or the state board of control. They were not legally in the service.

Sec. 16.29 (3), Stats., provides:

"Any person employed or appointed contrary to the provisions of sections 16.01 to 16.30, or of the rules established thereunder, shall be paid *by the officer or officers so employing or appointing,* or attempting to employ or appoint him, the compensation agreed upon for any service performed under such appointment or employment, or attempted appointment or employment, or in case no compensation is agreed upon, the actual value of such services and any expenses incurred in connection therewith, and shall have a cause of action against such officer or officers or any of them, for such sum and for the costs of the action. *No public officer shall be reimbursed by the state for any sums so paid or recovered in any such action."*

Sec. 16.27 (3), Stats., provides:

"Any sums paid contrary to the provisions of this section may be recovered from any officer or officers making such

appointments in contravention of the provisions of law or of the rules made in pursuance of law, or from any officer signing or countersigning or authorizing the signing or countersigning of any warrant for the payment of the same, or from the sureties on the official bond of any of said officers, in an action in the circuit court of any county within the state, maintained by the director or the personnel board or by any member thereof, or by a citizen resident therein, who is assessed for, and liable to pay, or within one year before the commencement of the action has paid, a state, city or county tax within this state. All moneys recovered in any action brought under this section when collected, shall be paid into the state treasury except that if a citizen taxpayer is plaintiff in any such action he shall be entitled to receive for his own use the taxable costs of such action and five per cent of the amount recovered as attorney's fees."

It is clear that the moneys paid by respondent to the two assistants to Miss Michels out of the proceeds of Miss Murphy's checks can be recovered from respondent or his surety. The same would apply as to the institutional cost of maintenance of Miss Michels and her assistants.

The appellant succeeded in making a very favorable settlement with the state on its claim for the payment of which both appellant and respondent were legally liable. One confronted with an obligation that he cannot legally resist is not obliged to wait to be sued and to lose a reasonable opportunity for a favorable compromise in order to avoid assuming the character of an interloper or volunteer in the matter of paying a liability common to him and another. *Western Casualty & S. Co. v. Milwaukee G. C. Co.* 213 Wis. 302, 306, 251 N. W. 491; 13 C. J. p. 823, § 6; 6 R. C. L. p. 1045.

*By the Court.*—Judgment reversed. Record remanded with directions to enter judgment in favor of the appellant and against the respondent in the sum of $725 with interest on said sum from the date of payment, and for costs.