[No. 22-40134-1.    Division One.    October 27, 1969.]
Panel 1

UNITED BOATBUILDERS, INC., *Appellant*, v. TEMPO PRODUCTS
COMPANY, *Respondent*.

*Merrick, Johnson, Burgess & Hofstedt* and *H. Roland Hofstedt*, for appellant.

*Lycette, Diamond & Sylvester* and *William J. Millard, Jr.*, for respondent.

SWANSON, J.—A boat manufacturer, United Boatbuilders, Inc., suing in warranty and negligence sought indemnity from the supplier of fuel tanks, Tempo Products Company, for amounts paid in settlement of a boat purchaser's claim.

The stipulated and pertinent facts are that one James Frazier, in a suit brought in federal court against United Boatbuilders, Inc., claimed that he was thrown up into the air and landed with his back against a seat, thus sustaining an injury, when his boat stalled while cruising on the Pacific Ocean. He blamed the engine failure on defective fuel tanks which contained accumulated dirt, debris, sediment,

and rust. The boat was manufactured by appellant in Bellingham, Washington.

The defense of this action was tendered by the appellant, United Boatbuilders, Inc., to Tempo Products Company. The tender was declined. The appellant denied liability but before trial settled Frazier's lawsuit for $5,000 and brought this action for indemnity to recover the amount of the settlement plus attorneys' fees and costs.

The fuel tanks installed on Frazier's boat were manufactured by another company but supplied to the appellant by Tempo Products Company with its trade name on the tanks. Neither party inspected the tanks, and it was agreed that such would not be practical since the only access to the tanks was through a 1¼ inch opening.

The agreed facts were adopted by the trial court as its findings of fact, and inasmuch as neither party has assigned error to them, these facts are verities. *Baugh v. Dunstan & Dunstan, Inc.,* 67 Wn.2d 710, 409 P.2d 658 (1966). Upon these findings the trial court concluded that the appellant, United Boatbuilders, Inc., is not entitled to indemnity, that no warranty existed, and dismissed the action.

Appellant's assignments of error will be considered together, since they raise only one issue—Was the trial court's conclusion correct that no right of indemnity could be found from the stipulated facts?

Appellant's argument may be summarized as follows. United ordered the tanks from Tempo, and an implied warranty of quality and merchantability arose pursuant to RCW 63.04.160(1) (2).[1] Tempo's knowledge of United's

---

[1] "(1) Where the buyer, expressly or by implication, makes known to the seller the particular purpose for which the goods are required, and it appears that the buyer relies on the seller's skill or judgment (whether he be the grower or manufacturer or not), there is an implied warranty that the goods shall be reasonably fit for such purpose.

"(2) Where the goods are bought by description from a seller who deals in goods of that description (whether he be the grower or manufacturer or not), there is an implied warranty that the goods shall be of merchantable quality."

purpose was shown from the sale itself.[2] A "potential liability" arose, United asserts, when the defense of Frazier's federal court action was tendered to Tempo, refused, and reasonable settlement made before trial. This "potential liability," appellant urges, caused the burden of going forward with evidence to shift to United. Since no other facts were presented, liability was proven based on the defective tanks. This being so, the warranty was breached, and United is entitled to be indemnified for its loss occasioned by Tempo's fault.

The law has long recognized an implied right of indemnity when a party is subjected to liability for the wrongful conduct of another. 3 L. Frumer & M. Friedman, Products Liability § 44.02, at 15 (1968). Our Supreme Court, in *Rufener v. Scott*, 46 Wn.2d 240, 243, 280 P.2d 253 (1955), recognized the rule relating to the right of indemnity as stated in 27 Am. Jur. *Indemnity* § 18.

> "But the operation of this rule against recourse is greatly circumscribed, with the result that one constructively liable for a tort is generally held entitled to indemnity from the actual wrongdoer, regardless of whether liability is imposed on the person seeking indemnity by statute or by rule of the common law, and irrespective of the existence of an express contract to indemnify.

The principle of indemnity is not without limitations. As discussed in *Rufener v. Scott, supra* at 242:

> It is the general rule that there is no right of indemnity between joint tort-feasors. *Duncan v. Judge*, 43 Wn. (2d) 836, 264 P. (2d) 865. However, if the tort-feasors are not *in pari delicto*, and the negligence of one is primary or active, and the negligence of the other is passive, resulting in injury to a third person, and the one guilty of passive negligence is required to answer in damages to the third person, he is entitled to indemnity from the wrongdoer guilty of primary negligence.

To establish a right of indemnity the appellant

---

[2]It is not clear how this knowledge was transmitted, since it is stipulated that the order was placed by one Mel Barr, an independent distributor, by catalogue number only.

must prove three basic elements: (1) that it was liable to Frazier (whether actual or only potential liability need be shown will be discussed below), (2) that the settlement was reasonable (this was agreed to by stipulation), and (3) that the facts are such as to give rise to a duty on the part of the respondent to indemnify appellant. As to the first requirement, the fact that United's payment was voluntary and Frazier's claim was not reduced to judgment does not defeat the right to indemnification. *Aberdeen Constr. Co. v. Aberdeen,* 84 Wash. 429, 147 P. 2 (1915); *Safeway Stores, Inc. v. Massachusetts Bonding & Ins. Co.,* 202 Cal. App. 2d 99, 20 Cal. Rptr. 820 (1962); *Pipe Welding Supply Co., Inc. v. Gas Atmospheres, Inc.,* 201 F. Supp. 191 (N.D. Ohio 1961). See generally 3 Frumer & Friedman, *supra* § 44.10 [2].

A person confronted with an obligation that he cannot legally resist is not obliged to wait to be sued and lose an opportunity to compromise. *Globe Indem. Co. v. Schmitt,* 142 Ohio St. 595, 53 N.E.2d 790 (1944); *United States Fid. & Guar. Co. v. Hooper,* 219 Wis. 373, 263 N.W. 184 (1935).

Given an indemnitee who has been notified of the suit and tendered the opportunity to defend, must the indemnitee prove potential liability (as well as the reasonableness of the settlement and the facts giving rise to the duty to indemnify), or must he prove actual liability to the third party claimant? The authorities are divided on this question. *Blockston v. United States,* 278 F. Supp. 576 (D. Md. 1968).

Appellant, in support of his theory, contends the indemnitor bears the burden of proving no liability and cites two cases: *Damanti v. A/S Inger,* 153 F. Supp. 600 (E.D.N.Y. 1957); *Hartford Acc. & Indem. Co. v. Payne,* 242 F. Supp. 888 (D. Ore. 1965). The court, in the first case, recognized the doctrine of "potential liability" and stated on 601:

It seems unlikely that the same degree of liability in fact on the part of the indemnitee must be established as would have been established by the plaintiff against the said indemnitee, for the law favors settlements, and if

such original liability had to be so clear cut, settlements could rarely, if ever, be made.

In the second case the Oregon federal court held that the burden of going forward with the evidence on the question of liability shifts to the indemnitor when he has been notified of the claim and refuses to defend. Our Supreme Court has never embraced the theory of "potential liability." It has consistently required an indemnitee, if he settles a claim before judgment, to prove[3] that he was in fact liable in damages. Justice Rosellini, speaking for the court in *Nelson v. Sponberg*, 51 Wn.2d 371, 376, 318 P.2d 951 (1957), discussed the rule as follows:

> As recognized in that case [*Oregon-Washington R. & Nav. Co. v. Washington Tire & Rubber Co.*, 126 Wash. 565, 219 P. 9 (1923)], Washington is with the majority of courts which hold that an indemnitee who seeks reimbursement from his indemnitor for a payment made by him in discharge of a claim indemnified against is not bound to submit to suit before paying the claim; but if he pays without such suit, as a condition of recovery from his indemnitor, he is under the necessity of proving that he was liable for the amount thus paid.

Accord, *Aetna Freight Lines, Inc. v. R. C. Tway Co.*, 352 S.W. 2d 372 (Ky. 1962).

A review of the findings of the trial court fails to disclose any actual basis for liability to the Fraziers. The tanks were only *alleged* to be defective, and the alleged cause of Frazier's injury—the failure of either United or Tempo to inspect the tanks prior to sale to the Fraziers—is of little significance in the absence of any finding that the tanks were in any way defective. At the risk of stating the obvious, the appellant presented no facts to support a conclusion that it was liable to the Fraziers. In addition, even if we assume that liability to the Fraziers was satisfactorily established and that implied warranty, either under the

[3]*Feuer v. Menkes Feuer, Inc.*, 8 App. Div. 2d 294, 187 N.Y.S. 2d 116 (1959), and *Fenly v. Revell*, 170 Kan. 705, 228 P.2d 905 (1951), hold the indemnitee may be required to establish his case against the indemnitor in the same way that the claimant against him would have been obliged to do, namely, by a preponderance of the evidence.

sales act or implied in law, ran from Tempo to United, the indemnitee must prove a breach of warranty by the indemnitor and that such breach was a proximate cause of the injury. As previously stated, the agreed facts do not reveal that the tanks were defective when received by United, or at any time. Furthermore, even if the tanks were defective and the warranty breached, the indemnitee must bear the burden of presenting evidence to support a determination as to whether the cause of the accident was (1) negligent operation of the boat by Frazier, (2) negligent installation of the fuel tanks on United's part, or (3) defective tanks supplied by Tempo. These issues could be determined on proper evidence and joinder of all parties, but such was not done here. In *Texas Motorcoaches, Inc. v. A. C. F. Motors, Co.*, 154 F.2d 91, 94 (3d Cir. 1946), where the purchaser of a bus involved in an accident suing in warranty sought indemnity from the manufacturer's sales agent and the manufacturer for amounts paid in settlement of passenger claims, the court said:

> The trail of liability could lead ultimately to . . ., the parts manufacturer, only if the accident on the Texas highway was caused by a defective brake drum improperly manufactured by [the parts manufacturer]. If the defect resulted from negligent assembly of the brake drum on the coach, this trail could lead only to [the assembler's sales agent] and [the assembler] but not to [the parts manufacturer].

Even beyond the question of causation is the matter of active or passive negligence which we deem unnecessary to discuss.

Since the appellant's evidence was insufficient to show a causal relationship between the injuries of Mr. Frazier and the condition of the fuel tanks, it is unnecessary to decide whether any possible negligence in installing the tanks was active rather than passive, thus precluding recovery of indemnity from the respondent.

Appellant's assignments of error are without merit for the reasons stated above, and the judgment is affirmed.

JAMES, C. J., and FARRIS, J., concur.